913 S.W.2d 951 (1996)
In re MARRIAGE OF Fred Melvin GLUECK and Mary Jean Glueck Tanner.
Fred Melvin GLUECK, Petitioner/Cross-Respondent/Respondent,
v.
Mary Jean Glueck TANNER, Respondent/Cross-Movant/Appellant.
No. 66929.
Missouri Court of Appeals, Eastern District, Division Five.
January 23, 1996.
*953 Robin Edward Fulton, Schnapp, Graham & Reid, Fredericktown, for appellant.
Diane Campbell Howard, Limbaugh, Russell, Payne & Howard, Cape Girardeau, for respondent.
CRANE, Chief Judge.
Mother appeals from the trial court's judgment entered on both parties' motions to modify child support for four children born of the marriage. The trial court terminated father's child support obligation with respect to two children and increased child support payments for the remaining two children from $312.50 per month per child to $388.39 per month per child. Mother contends that the trial court erred in calculating the *954 amount of the monthly award, in not awarding her attorney's fees, in finding the older children emancipated as of their high school graduation date, and in finding no back child support due. We find the trial court erred in not awarding mother back child support for one child for three months support prior to the child's emancipation. We modify the trial court's judgment to make this award and affirm as so modified.
The parties' marriage was dissolved on September 14, 1989. The dissolution decree incorporated a Separation Property Settlement Agreement (the Agreement) for, inter alia, child support and child custody. Pursuant to the Agreement, Mary Jean Glueck Tanner (mother) was awarded primary custody of the four children of the marriage, Angela and Tamela, twins born October 15, 1973, April, born April 5, 1978, and Casey, born July 30, 1979. Fred Melvin Glueck (father) agreed to pay child support of $312.50 per month per child for a total of $1,250.00 per month. Father also agreed to provide medical insurance for the children. Mother agreed that she would pay all tuition for the minor children at Notre Dame High School and St. Vincent's School. Pursuant to the Agreement, the court awarded mother custody and $312.50 per month per child as child support and ordered father to provide the children with medical insurance.
On October 28, 1992 father filed a motion to modify the dissolution decree seeking to abate his child support obligation with respect to Angela and Tamela on the ground that they were both emancipated. Mother filed an answer claiming that she still supported Angela and Tamela and filed a cross-motion for an increase in child support. Mother sought an increase in support payments on the grounds that the cost of the children's support had increased and that the two remaining minor children, April and Casey, had private school tuition costs. After conducting an evidentiary hearing on these motions, the trial court entered its judgment.
Our review of a trial court's ruling on a motion to modify child support is limited to determining whether the ruling is supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. In re Marriage of Cohen, 884 S.W.2d 35, 37 (Mo.App.1994). We defer to the trial court's determination of credibility and view the evidence, along with all reasonable inferences flowing therefrom, in the light most favorable to the judgment. In re Marriage of Julian, 868 S.W.2d 182, 184 (Mo.App.1994).

I.
For her first point mother asserts the trial court's award of child support for the two remaining minor children, April and Casey, in the amount of $388.39 per month per child was insufficient. She claims that the trial court failed to take into consideration private school tuition costs, improperly calculated father's income to be $5,593.42 per month, improperly calculated mother's income under Form 14, and improperly considered medical insurance costs. Mother argues that monthly support for both children should be either $1,354.07 or $1,179.82.
At the end of the hearing, mother filed three alternate versions of Form 14 using different income figures on each. On one Form 14, she used monthly gross income of $8,205.50 for father and $4,778.11 for herself based on both parties' average incomes from 1991 and 1992. On a second Form 14, she used monthly gross income of $8,205.50 for father and $7,427.08 for herself based on father's average income for 1991 and 1992 and her 1993 income. On a third Form 14, she used monthly gross income of $6,120.11 for father and $4,778.11 for herself based on both parties' average incomes for 1991 through 1993. Father filed one Form 14, using monthly gross income of $3,900.00 for himself and $7,400.00 for mother. The trial court completed its own Form 14, using monthly gross income of $5,593.92 for father and $7,420.17 for mother.
A. Private School Tuition
Mother first claims that the trial court erred in failing to consider Casey and April's tuition at Notre Dame High School in calculating child support. In her cross-motion to modify, mother alleged that the continuing and substantial change of circumstances included *955 the fact that the children were attending Catholic schools and she could not afford that tuition. Each Form 14 completed by mother included $185.00 per month for Notre Dame High School under "extraordinary expenses." The trial court found a change in circumstances sufficient to justify an increase in the child support amount, but did not include the $185.00 monthly tuition as an extraordinary expense in its Form 14 calculation.
A child's educational need is a relevant factor the trial court may consider in awarding child support. § 452.340.1(4) RSMo; Rule 88.01(e). Thus the cost of private school tuition may be a valid item of support. Busken v. Busken, 878 S.W.2d 78, 80 (Mo.App.1994). However, the decision to increase support to require a non-custodial parent to pay a portion of private school tuition rests within the sound discretion of the trial court. Id. We will defer to that court's judgment unless the evidence is palpably insufficient to support it. Id.
At the time of the separation and subsequent dissolution, mother agreed "that she shall pay all tuition for the minor children at Notre Dame High School and St. Vincent's School." The parents' agreement as to child support cannot preclude the trial court from setting the amount of support or changing its order as conditions change. It remains the special obligation of the judge who must act according to the evidence presented. Williams v. Cole, 590 S.W.2d 908, 911 (Mo. banc 1979). Nevertheless, the parties' agreement relating to this educational expense is strong evidence that it is appropriate that wife pay the tuition to these schools. Howerton v. Howerton, 796 S.W.2d 665, 670 (Mo.App.1990); Rothfuss v. Whalen, 812 S.W.2d 232, 240 (Mo.App.1991).
Mother did not present evidence that circumstances had so substantially changed since the original decree that she should be relieved of this obligation. Four children were attending private Catholic schools at the time of the original decree. At the time of the modification hearing only two children remained in private Catholic schools. Further, her income was substantially higher at the time of the hearing. The trial court did not abuse its discretion in not including the cost of private school tuition in its child support calculation.
B. Calculation of Father's Income
Mother next asserts that the trial court erred in calculating father's income. She argues that the trial court improperly failed 1) to use actual income, 2) to add depreciation into the income amounts, 3) to discount 1993 income as an aberration, and 4) to consider evidence that father did not report all his income. At the time of the hearing, father was self-employed and operated a roofing business and a farm. Father's gross income as shown on his Missouri income tax returns for the four years prior to the hearing is as follows:
 YEAR INCOME
 1990 $62,674.00
 1991 $79,059.00
 1992 $83,251.00
 1993 $43,498.00
The trial court averaged these figures to calculate father's monthly gross income on its Form 14 of $5,593.92. The trial court did not exclude depreciation from the ordinary and necessary expenses which were deducted from the gross receipts.
In modifying child support, the trial court may properly consider both past and current earnings of the non-custodial spouse to calculate an average which is consistent with historical earning levels or representative of future earning levels. Frisella v. Frisella, 872 S.W.2d 637, 642 (Mo.App.1994). Father testified that his income fluctuates each year depending on how much new business he generates and how much warranty work he is required to do. The trial court did not abuse its discretion in averaging the last four years of father's income to project father's continuing level of income.
Likewise, it was within the trial court's discretion to not exclude amounts for depreciation from ordinary and necessary expenses. The directions for Form 14 define "gross income" from self-employment as "gross receipts minus ordinary and necessary expenses required to produce income. The court may exclude from ordinary and *956 necessary expenses amounts for depreciation, investment tax credits, and other noncash reduction of gross receipts." (emphasis added). The directions allow, but do not require, the trial court to exclude depreciation income.
Mother last argues that the trial court improperly used the figures from father's income tax returns in calculating his income because there was evidence that father did not report all his income. There was conflicting evidence on the accuracy of the income figures on father's tax returns. We defer to the trial court's resolution of this factual issue.
C. Calculation of Mother's Income
Mother next claims that the trial court erred in calculating her gross income. The trial court found mother's gross income to be $7,420.17 per month. One Form 14 mother submitted to the court as an exhibit showed her monthly gross income as $7,427.08 based on her 1993 income of $89,125.00.
At the time of the hearing, mother was employed and was earning about $70.00 per week. However, she had income from business interests including corporations, limited partnerships, and trusts. Mother's 1993 income tax return shows $89,000.00 in income from her family businesses. Mother testified that all but $25,000.00 of the $89,000.00 was actually retained by the business interests. She argues the trial court should not have considered retained income and should have considered years other than 1993.
The directions for Form 14 define "gross income" from a partnership or closely held corporation as "gross receipts minus ordinary and necessary expenses required to produce income." The directions for Form 14 further provide that "[i]ncome, expenses and retained earnings should be reviewed to determine gross income." There was substantial evidence to support the trial court's determination that mother's gross income was $89,125.00. Further, in one of her three Form 14's filed with the trial court, mother listed her annual income as $89,125.00. A party may not complain on appeal of an error in which that party joined or acquiesced at trial. Taylor v. Taylor, 908 S.W.2d 361, 363 (Mo.App.1995).
In addition, the trial court may, in its discretion, look at a single year's income figures if the court finds those figures to be the most accurate predictor of a parent's income. See Kessinger v. Kessinger, 829 S.W.2d 658, 661 (Mo.App.1992). Mother's gross income for the four years prior to the hearing was as follows:
 YEAR INCOME
 1990 $ 3,487.00
 1991 $24,414.00
 1992 $58,473.00
 1993 $89,125.00
It was within the trial court's discretion to treat mother's 1993 gross income as the most accurate predictor of her income.
D. Medical Insurance Costs
Mother next asserts that the trial court improperly considered medical insurance costs in calculating child support when there was no evidence of these costs or that father paid for health insurance for April and Casey. Since the dissolution, father has maintained medical insurance for the children as ordered by the court. Father's current wife testified she purchased this insurance coverage through her employment. She testified that she, husband, and the two children were covered. On father's Statement of Income and Expenses filed with the court, he showed monthly payments for health and accident insurance as $142.00. Father testified at the hearing that the figures reflected on the statement were accurate. The trial court could base its calculation on father's testimony. In re Marriage of Zavadil, 806 S.W.2d 506, 511-12 (Mo.App. 1991).
Father's Form 14 filed with the court showed $60.00 per month as the cost of the children's insurance and claimed this amount as a credit. The trial court used the $60.00 figure on its Form 14 as the cost of health insurance and credited father with this amount. If there were four persons covered under the policy as father's wife testified, the amount allowable to the two children under *957 the Form 14 directions would be $71.00.[1] The trial court did not err in using father's lesser amount of $60.00 per month as the health insurance costs for the two minor children.
Mother also argues that the court erred in giving father credit for the cost of the medical insurance when the cost was actually deducted from father's wife's paycheck. Father testified that this was his expense. That he did not pay the premiums directly, but through his wife, who had access to a plan, is immaterial in this situation. Point one is denied.

II.
For her second point mother asserts that the trial court erred in failing to order father to pay her attorney's fees. She argues that she did not have the financial means to pay such fees, that the fees were incurred due to father's actions, that father was guilty of misconduct, and that father's income was greater than mother's income. The trial court ordered each party to pay his or her own fees.
The trial court has broad discretion in awarding attorney's fees in child support modification cases. Luker v. Luker, 861 S.W.2d 195, 199 (Mo.App.1993). A deviation from the general rule requiring each party to bear his or her own costs by requiring one party to pay the other party's attorney fees on a motion to modify is not justified absent a showing of "very unusual circumstances." Campbell v. Campbell, 825 S.W.2d 319, 323 (Mo.App.1992). In this case, mother demonstrated no unusual circumstances. The trial court did not abuse its discretion in denying mother's request for attorney's fees.

III.
For her third point mother asserts the trial court erred in finding that Angela and Tamela were emancipated upon their graduation from high school on May 27, 1992 and argues that the finding is inconsistent with the court's finding that no back child support was owed as of that date. Mother further contends that the evidence supports an emancipation date no earlier than October 1, 1992 and that child support should be paid directly to Angela and Tamela from the time of their graduation until they complete their vocational training.
Both Angela and Tamela turned eighteen on October 15, 1991 and graduated from high school on May 27, 1992. Neither Angela nor Tamela was enrolled in an institution of vocational or higher education by October first following their graduation from high school.
A parent's obligation to make child support payments terminates when a child reaches the age of 18 unless the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried, or unless the child is enrolled in and attending a secondary school program of instruction when he reaches age 18. § 452.340.3 RSMo 1994.
If when a child reaches age eighteen, he is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue until the child completes such program or reaches age twenty-one, whichever first occurs. If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school and so long as the child continues to attend such institution of vocational or higher education, the parental support obligation shall continue until the child completes his education, or until the child reaches the age of twenty-two, whichever first occurs. If the circumstances of the child manifestly dictate, the court may waive the October first deadline *958 for enrollment required by this subsection....
§ 452.340.5 RSMo 1994.
The trial court found that both Angela and Tamela became emancipated upon graduation from high school. This finding is dictated by this statute. The two children were eighteen, had completed high school, and were not enrolled in an institution of higher learning by October 1 following their high school graduation.
Father did not make child support payments for Angela in February, March, and May 1992. During this time Angela was not living with mother, but had moved in with her boyfriend. In order for a noncustodial parent to be entitled to abate support payments, "the custodial parent [ ] [must] voluntarily relinquish[ ] physical custody of [the] child to the noncustodial parent...." § 452.340.2 RSMo 1994 (emphasis added). Although Angela moved out of mother's home, she did not move in with father. This was not a voluntary relinquishment to the noncustodial parent under § 452.340.2. Father's support obligation did not terminate until May 27, 1992. As he was not entitled to abate that support during February, March, and May, 1992, mother was entitled to an award of back child support for Angela for February, March, and May in the amount of $312.50 per month.
Mother's arguments that father was obligated to support Angela and Tamela until October 1, 1992 and that "the circumstances of the children manifestly dictate[ ] that child support continue until the children complete their vocational training" have no merit. Section 452.340.5 clearly provides that the parental support obligation continues for a high school student "until the child completes such [secondary school] program or reaches age twenty-one, whichever first occurs." (emphasis added). Thus, father was not obligated to support Angela and Tamela after their high school graduation.
Further, mother has shown no circumstances which would manifestly dictate that Angela and Tamela receive support until they complete vocational school. Angela permanently moved out of mother's home on December 31, 1991, Tamela permanently moved out of mother's home on April 5, 1992, and mother no longer supported them. Accordingly, at the hearing mother amended her request for child support and asked for support to be paid directly to Angela and Tamela until they completed vocational school. Neither was enrolled in vocational school on October 1 following high school graduation. They were enrolled in beauty school at the time of the hearing in August, 1994. Mother did not show any circumstances which would manifestly support waiving the October 1 deadline so they could receive support when they later enrolled in beauty school.
Mother relies on Braun v. Lied, 851 S.W.2d 93 (Mo.App.1993) and McIlroy v. Simmons, 832 S.W.2d 949 (Mo.App.1992). In Braun the court found the child did not become emancipated when the child temporarily withdrew from college because of her medical condition. In McIlroy the court waived the October 1 deadline because the child had timely enrolled in an Italian school which met all of the guideline criteria except that it did not charge a fee. In this case the only testimony relative to why either child was not enrolled in vocational school on October 1, 1992 was Angela's testimony that she had not gone to vocational school because she had given birth to a child in June, 1993. However she did not testify to any illness or complications of pregnancy that prevented her enrollment by October, 1992. The trial court did not abuse its discretion in failing to waive the October 1, 1992 enrollment deadline.
The judgment of the trial court is modified to provide that father pay mother the sum of $937.50 in back child support. As so modified the judgment is affirmed.
SIMON, J., and CHARLES B. BLACKMAR, Senior Judge, concur.
NOTES
[1] The Directions for Completion of Form 14 provide that the amount of health insurance premiums is:

the amount actually paid by the parent or that the employer actually deducts from the parent's paycheck, on a monthly basis, for health insurance benefits. The amount included in the child support calculation is the amount of the health insurance premium actually attributable to the child(ren) subject to the order. If the amount is not available or cannot be verified, the total cost of premium is divided by the total number of persons covered by the policy and then multiplied by the number of children covered by the policy who are subject to the order.