**Donald A. HARRIS, Petitioner–Appellant,**

v.

**Debra D. PARMAN, Respondent–Cross–Appellant.**

**Nos. 23761, 23774.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 1, 2001.

Motion for Rehearing and Transfer Denied
Aug. 30, 2001.

Application for Transfer Denied
Oct. 23, 2001.

M. Douglas Harpool, Daniel, Clampett, Powell & Cunningham, Springfield, for Appellant.

Lisha A. Masters, Pratt & Fossard, Springfield, for Respondent.

SHRUM, Presiding Judge.

This is a domestic relations case in which both parties, Donald Harris ("Father") and Debra Delight Parman ("Mother"), appeal from a judgment that disposed of multiple post-dissolution disputes about child support, attorney fees, child custody, and child visitation.

In No. 23761, Donald A. Harris ("Father") filed a brief that has five points relied on. We deny his first two points because they urge reversal on a theory never presented at trial and were first raised via post-trial motion. We find no merit in Father's third point that complains about how the trial court used Form 14 to calculate child support. Father's fourth and fifth points preserve nothing for our review because they violate mandatory briefing rules. Even so, we have reviewed Point V under the plain error standard of Rule 84.13(c) and find no manifest injustice or miscarriage of justice resulting from the trial court's rulings about which Father complains.[1]

In No. 23774, Mother claims the trial court erred (a) when it omitted certain rental and interest income from Form 14 in arriving at Father's child support obligation, (b) in failing to give Mother the child dependency exemption for income tax purposes, (c) by not ordering Father to pay Mother's attorney fees, and (d) in allowing a credit for health insurance, given to Father, to be included in the calculation of prospective child support owed to Mother. The last claim of error mentioned is the only one with merit raised by Mother. Consequently, we reverse that part of the judgment relating to child support and amend it pursuant to Rule 84.14. The judgment, as amended by this court, is affirmed.

The marriage between Mother and Father was dissolved in 1982, and Mother was awarded custody of the two children born of the marriage, Chad (born August 8, 1976) and Branton (born May 18, 1979). In part, the dissolution decree provided Father was to pay Mother $390 per month as child support for both children and gave Father certain visitation rights, i.e., every other weekend, certain holidays, and a two-week summer visitation period. Between 1982 and 1995, Mother "initiated multiple actions arising out of [Father']s visitation[,]" but for purposes of this opinion these will not be discussed as they are not relevant to our decision.

The genesis of the present controversy was Mother's use of the Division of Child Support Enforcement ("DCSE") in February 1995, to increase the $390 per month child support amount. In April 1995, Father was notified that his child support obligation had been increased by over 300% to $1,282 per month. In May 1995, Father appealed the DCSE's decision by requesting an administrative hearing. The hearing was to be held on August 29, 1995. Prior to the hearing date, on August 25, 1995, Father filed the gravamen of this appeal in circuit court, i.e., motion to modify the decree, motion for contempt, and motion for abatement of child support. Mother filed answers to Father's motions along with a countermotion to modify the decree. Subsequently, the DCSE issued an administrative order that reduced Father's child support obligation to $1,148 per month. Father never appealed the second DCSE order, and it became final. The first hearing on the various motions filed was held February 24, 1997, and was continued for further evidence. Several other hearings were held, two in June 1997, another in July 1997, and finally, by agreement of the parties, a supplemental

---

1. All rule references are to Supreme Court Rules (2001) unless otherwise indicated.

hearing was held in May 1999.[2] Following more delays, attributable to whom is unclear from the record, a judgment was finally entered on March 23, 2000. Father then filed a motion to reconsider, rehear, amend, revise, or vacate the judgment that was sustained in part. An amended judgment was finally entered on July 5, 2000, which made various findings, conclusions, and orders that the parties now claim were erroneous. The judgment's provisions will be discussed as necessary as we analyze the parties' claims of trial court error.

CASE NO 23761: FATHER'S APPEAL

*POINTS I & II: CHILD SUPPORT ABATEMENT PER § 452.340.5, RSMo 2000*[3]

■ Father's first two points on appeal are consolidated because the allegations of trial court error in each are the same, except Point I pertains to Branton and Point II involves Chad. Father alleges the trial court erred when it held he owed $1,148 per month for child support for both children from September 25, 1995, to May 9, 1998. Father claims he was not given any information about Chad's status in college; consequently, § 452.340.5 suspended his support obligation as to Chad beginning in May 1997.[4]

In relevant part, § 452.340.5 provides:

"5. . . . If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school . . . and so long as the child enrolls for and completes at least twelve hours of credit each semester . . . at an institution of vocational or higher education and achieves grades sufficient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs. *To remain eligible for such continued parental support,* at the beginning of each semester *the child shall submit to each parent a transcript . . . which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and an official document from the institution listing the courses which the child is enrolled in for the upcoming term and the number of credits for each such course.*" (Emphasis supplied.)

Although Father now argues the trial court erred by not abating his child support obligation because his sons did not provide him with the information required under § 452.340.5, this is an argument Father *never* made at trial. Father's motion to abate child support, his evidence at trial, and most of his post-trial filings dealt exclusively with his request for child support abatement based on Mother's refusal to comply with child visitation orders. Any doubt about the exclusivity of Father's focus at trial is removed upon recalling that the version of § 452.340 in effect when Father filed his motion to abate in August

2. From July 1997 through March, 1999, various motions were filed that appear to have merely delayed the finality of this case. In March 1999, the parties agreed that a supplemental hearing should be held, presumably because of the extensive time lapse and the fact that many of the unresolved issues dealt with financial conditions that may have changed since the last reception of evidence.

3. The 2000 version of § 452.340.5 was not in effect until July 1, 1997. *See* n. 5.

4. Father makes the same argument regarding Branton's support, except to say that it was suspended at a later date, i.e., December 1998. The judgment ordered Father to continue support for Branton only in the amount of $798 per month after Chad's graduation from college on May 9, 1998.

1995 *did not* require a child to document his or her continued higher education participation as a precursor to continued support; consequently, abatement on that ground was not an option when Father filed his abatement motion in 1995.[5]

What § 452.340 did contain in 1995, is the following:

"6. A court may abate, in whole or in part, any future obligation of support or may transfer the custody of one or more children if it finds:

"(1) That a custodial parent has, without good cause, failed to provide visitation or temporary custody to the noncustodial parent pursuant to the terms of a decree of dissolution thereof; and

"(2) That the noncustodial parent is current in payment of all support obligations pursuant to the terms of a decree of dissolution...."

Although the legislature made significant changes in § 452.340 during the pendency of this litigation, which included adding what is now § 452.340.5, Father did not amend his pleadings to seek child support abatement based on § 452.340.5, nor did he notify the court or Mother in any other fashion, either before or during trial, that he was making such a claim.[6] On this record, neither the trial court nor Mother could have known of such claim until Father filed his "motion to reconsider" on April 5, 2000.

 A party seeking abatement of his or her child support obligation based on

§ 452.340 provisions bears the burden of proof on that claim. *Harris v. Rattini,* 855 S.W.2d 410, 412[8] (Mo.App.1993). Generally, a party with the burden of proof on an element of a cause of action must also plead that element. *See Textron Financial v. Trailiner Corp.,* 965 S.W.2d 426, 429[1] (Mo.App.1998). A certain degree of flexibility is allowed in pleading a cause of action, but a party cannot completely stray from a specifically pleaded statutory theory of relief, then claim the theory intended was a wholly different statutory theory. *Division of Child Support Enforcement v. Estrada,* 916 S.W.2d 443, 451 (Mo.App. 1996). Because Father failed to plead facts or theories entitling him to abatement under § 452.340.5, and because " 'a party cannot recover for a cause of action not pleaded,' " *Clay v. Missouri Highway and Transp. Comm'n,* 951 S.W.2d 617, 631 (Mo.App.1997) (citation omitted), we affirm the trial court's refusal to abate child support based on Father's post-trial claim that his sons never complied with § 452.340.5. Points I and II are denied.

## POINTS III: ALLEGED ERRORS IN CHILD SUPPORT ADJUDICATION

Father's third point maintains the trial court erred in its various child support rulings "because the Court's child support calculation erroneously:

"1. Failed to impute income to [Mother];

"2. Failed to consider income earned by the minor children available to meet

---

**5.** The version of § 452.340 that first required post-secondary students to provide a child-support obligor parent with proof of successful full-time school attendance as a precursor to continued child support became effective July 1, 1997.

**6.** As part of the 1997 re-write of § 452.340, the language that allowed child support

abatement based on a custodial parent's refusal to abide by a child visitation order or temporary custody order was renumbered from § 452.340.6 to § 452.340.7. Also, under § 452.340.7, RSMo Cum.Supp.1998, retroactive abatement of child support became an option.

their financial needs in the calculation of child support;

"3. Is based on stale or untimely evidence in that there was no evidence [in] the record on which the Court could base the proper child support calculation in July 2000 because there was no information in the record regarding any of the factors described in RSMo 452.340 on any date ... after May 1999...."

■ The first prong of Father's third point, i.e., that the court committed reversible error when it failed to impute income to Mother, ignores the fact that one of the Form 14 documents Father submitted for the trial court's consideration listed Mother with no imputable income. This is analogous to what happened in *In re Marriage of Glueck*, 913 S.W.2d 951 (Mo.App.1996). There the wife submitted three Form 14 documents and on one, listed her monthly gross income as $7,427.08. This was based on her 1993 income of $89,125. On appeal, the wife complained the trial court erred in attributing to her a gross monthly income of $7,420.17 in its calculation of the child support amount. The *Glueck* court rejected the wife's argument, holding, *inter alia*, that "[a] party may not complain on appeal of an error in which that party joined or acquiesced at trial." *Id.* at 956[10].

What was said in *Glueck* is dispositive here. Father cannot invite error by filing a Form 14 which had no income imputed to Mother, and then complain when the trial court did as he requested. We reject Father's arguments to the contrary.

■ As to Father's second argument under Point III, i.e., the trial court failed to consider the children's income in calculating support, it is true that

§ 452.340.1(1), RSMo Cum.Supp.1997, directs that the "financial ... resources of the child" be considered as a relevant factor when calculating child support.[7] Moreover, Comment F regarding Line 12 of Form 14 as promulgated by Rule 88.01 (2000) provides:

"F. COMMENT: In a proceeding to establish a child support order or to modify the support payable under an existing order, when determining whether to deviate from the presumed child support amount (line 12), a court ... should consider all relevant factors, including whether:

"(1) a child receives income that is not based on the child's special needs[.]"

With § 452.340.1 and Comment F as his only cited authority, Father insists the trial court erred by failing to consider his sons' income and using their income to offset the presumed support amount contained in the table. We note, however, there is no requirement in Rule 88.01 (2000) or under relevant statutes that the income of children be included in the Form 14 computation. The requirement is that children's income be *considered* in determining whether to deviate from the presumed child support amount. We also note there is no formula respecting the weight that the trial court should give this or any other relevant factor in deciding whether to deviate from the presumed child support amount. As a reviewing court, we presume the trial court considered all the evidence and followed the law in making its decision on child support unless such presumptions were refuted by the record. *Panettiere v. Panettiere*, 945 S.W.2d 533, 540[17] (Mo.App.1997). Moreover, Rule 88.01 (2000) establishes a rebut-

---

7. Section 452.370.2, RSMo Cum.Supp.1997, provides that once a party seeking modification of a child support judgment meets the burden of proof set forth in § 452.370.1, RSMo Cum.Supp.1997, "the child support shall be determined in conformity with criteria set forth in section 452.340 and applicable supreme court rules."

table presumption that child support calculated according to civil procedure Form 14 is the amount of child support to be awarded by the trial court. *In re Marriage of Gerhard,* 985 S.W.2d 927, 930 (Mo.App. 1999).

After carefully examining this record, we find nothing therein to refute the presumptions that the trial court considered all the evidence, followed the law, and that the child support calculated by the trial court according to Form 14 was not an abuse of discretion. We reject Father's argument to the contrary.

Father's third claim under Point III, i.e., that the trial court erred because it decided the child support issue on a "stale" record, cites no case law or other authority in support of such argument. Moreover, Father's brief fails to inform us whether there is precedent available, for or against the point, and otherwise fails to explain why citations are unavailable. Rule 84.04(d)(5) requires that an appellant's brief "include a list of cases [immediately following each "Point Relied On"], not to exceed four, and the constitutional, statutory and regulatory provisions or other authority upon which that party principally relies." The requirement in Rule 84.04(d) that points relied upon must be supported with citation of authority are mandatory. *Inman v. Reorganized School Dist. No. II,* 845 S.W.2d 688, 694[6] (Mo. App.1993). "A point of error unsupported by a citation of relevant authority is deemed abandoned." *Id.* at 694[7]. We consider the third prong of Father's Point III abandoned. Point III is denied.

## *POINTS IV & V: UNPRESERVED CLAIMS OF TRIAL COURT ERROR*

Mother has moved for dismissal of Father's fourth and fifth points relied on for failure to abide by mandatory briefing requirements prescribed by Rule 84.04.[8] Because of Mother's motion, we reproduce those points verbatim.

"IV. The trial court erred (a) in Paragraph 4 of the Amended Judgment in denying [Father's] Motion to Modify Custody, (b) in Paragraph 5 of the Amended Judgment in denying [Father's] Motion for Contempt, (c) in Paragraph 6 of the Amended Judgment in denying [Father's] Motion for Abatement of Child Support, and (d) in overruling [Father's] Motion for Commission of Counseling to Re-establish Visitation filed on March 1, 1996, and in refusing to order mandatory counseling in Paragraph 15 of the Amended Judgment because:

"1. The rulings are erroneous as a matter of law in that they are inconsistent with the Court's own finding concerning the 'best interest' of the children being served by reconciliation between [Father] and his sons;

"2. The rulings are based on an erroneous standard of law which requires 'affirmative action to interfere with [Father's] visitation and contact with the children' before entry of an order of remedial action, rather than the proper legal standard which requires only evidence that [Mother] interfered with [Father's] ability to have a significant and meaningful relationship with his children, in contravention of [Father's] rights when such a relationship was in the best interest of the children;

"3. The rulings are inconsistent with the public policy directive of the State

---

**8.** Mother also moved for dismissal of Father's third point because of Father's failure to comply with Rule 84.04.

of Missouri to fashion judicial orders concerning parental rights after divorce in a manner which best assures significant and meaningful contact between the parents and children after divorce; abdicate the responsibility of the trial court to effectuate Missouri public policy in support of advancing significant and meaningful relationship between non-custodial parents and their children after dissolution when in the children's best interest, and impose no sanction, consequence or penalty upon [Mother] for actions inconsistent with [Father's] rights under the Decree."

Father's fifth point reads as follows:

"V. The trial court erred (a) in Paragraph 4 of the Amended Judgment in denying [Father's] Motion to Modify Custody and Visitation, (b) in Paragraph 5 of the Amended Judgment in denying [Father's] Motion for Contempt, (c) in Paragraph 6 of the Amended Judgment in denying [Father's] Motion for Abatement of Child Support, (d) in overruling [Father's] Motion for Commission of Counseling to Re-establish Visitation filed on March 1, 1996, and refusing to order mandatory counseling in Paragraph 15 of the Amended Judgment, and (e) in finding [Mother] 'did not take affirmative action to interfere with [Father's] visitation and contact with the children' because the overwhelming weight of the evidence demonstrated that [Mother] took affirmative action to interfere with [Father's] visitation and contact with the children and to interfere with [Father's] ability to have a

meaningful and significant relationship with the children."

▪▪▪ Father's assertions that the trial court committed reversible error when it failed to (1) order a custody change, or (2) punish Mother via a contempt citation, or (3) punish Mother by abating child support, or (4) order counseling, are separate, distinct contentions of error that require differing summaries of "why, in the context of the case, those legal reasons support the claim of reversible error." *See* Rule 84.04(d)(1).[9] Father has made a fundamental briefing error by attempting to group multiple instances of error into a single point relied on where the incidents do not relate to a single issue. *Thummel v. King,* 570 S.W.2d 679, 688[14] (Mo.banc 1978); *Wood v. Wood,* 2 S.W.3d 134, 139[9] (Mo.App.1999). "Separate issues should be stated in separate points relied on." *Wheeler v. McDonnell Douglas Corp.,* 999 S.W.2d 279, 283[1] n. 2 (Mo.App.1999). A point relied on containing multifarious claims of trial court error is not in compliance with Rule 84.04. *Bydalek v. Brines,* 29 S.W.3d 848, 857 (Mo.App.2000).

Even if we tried to review each claim of trial court error listed in Points IV and V separately, there still would not be compliance with Rule 84.04 because Father has not explained in Points IV and V, "why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1)(C). It is not enough for a point relied on to say that a trial court was wrong without citing some evidence or testimony which gives support to such conclusion. *Estate of Phillips v. Matney,* 40 S.W.3d 15, 18[6] (Mo.App.2001).

9. In pertinent part, Rule 84.04(d)(1) provides:

"(1) Where the appellate court reviews the decision of a trial court, each point shall:
"(A) identify the trial court ruling or action that the appellant challenges;

"(B) state concisely the legal reasons for the appellant's claim of reversible error; and
"(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error."

■ The requirement that the point relied on clearly state the grounds for appeal "is not simply a judicial word game or a matter of hypertechnicality [for] appellate courts. It is rooted in sound policy." *Thummel,* 570 S.W.2d at 686[6]. Accordingly, "allegations of error ... not properly briefed ... shall not be considered in any civil appeal." Rule 84.13(a). A point relied on which does not comply with Rule 84.04(d) "preserves nothing for appellate review[,]" *Bydalek,* 29 S.W.3d at 857, and "constitutes grounds for dismissal." *Estate of Phillips,* 40 S.W.3d at 18[7].

■ When a point relied on preserves nothing for appellate review (as occurred here), appellate courts may nevertheless look to the argument portion of the brief to decide if there was plain error which would allow relief under Rule 84.13(c).[10] *See Cosky v. Vandalia Bus Lines, Inc.,* 970 S.W.2d 861, 867[11] (Mo. App.1998). Turning to the argument portion of Father's brief, our initial finding is that Father's complaints of trial court error regarding custody and counseling are now moot. "Mootness indicates that a controversy existed, which was properly before the court for resolution, but was extinguished by the occurrence of some event, rendering the controversy academic." *Local 781 International Assoc. of Fire Fighters, AFL–CIO v. City of Independence,* 947 S.W.2d 456, 460[5] (Mo.App. 1997). "Issues that are moot are not subject to consideration." *Bratton v. Mitchell,* 979 S.W.2d 232, 236[5] (Mo.App.1998). This rule attends in domestic relations cases, *Schulte v. Schulte,* 949 S.W.2d 225, 226–27 (Mo.App.1997), including those in which child visitation is an issue. *Tootle v. Tootle,* 362 S.W.2d 760, 762 (Mo.App.1962). The occurrence here that renders aca-

demic our review of the custody orders is that both sons are emancipated. Chad is now 24 years old and Branton reached age 22 on May 18, 2001; consequently, any opinion voiced by this court would be merely advisory in nature, since there is nothing on which our mandate could operate regarding custody or court-ordered counseling. *Id.*

Our second observation is that when we turn to the arguments under Point IV in an attempt to address whether the trial court erred in not punishing Mother for violating the court's orders about visitation, we find no help in the Point IV argument because the argument does not have a single specific page reference to the legal file or transcript. This violates Rule 84.04(d)(1)(i) and leaves us with the option of either, (a) reading five transcripts containing 755 pages and speculating about what testimony therein Father deems supportive of his point relied on, or (b) refusing to exercise our discretion to review for plain error. We choose not to review Point IV under the plain error standard.

We have, however, reviewed Point V for plain error. We note that the page references in Father's Point V argument only cite evidence and testimony favorable to his argument and ignore all testimony that conflicts with his argument. The trial court found "the failure of [Father's] visitation and contact with the children, while regrettable, was in large part a result of the actions of [Father] and his wife, Ina Jane Harris, which created an estrangement between [Father] and the children." Our gratuitous review of the record reveals there is ample evidence to support that trial court finding; consequently, no manifest injustice or miscarriage of justice resulted from the trial court's refusal to

---

**10.** Rule 84.13(c) provides: "(c) Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

punish Mother, either by contempt citation or ordering repayment of child support amounts. Point IV has preserved nothing for our review; Point V is denied.

CASE NO. 23774: MOTHER'S APPEAL

*POINT VI: FAILURE TO INCLUDE ALL OF FATHER'S INCOME ON FORM 14*

Mother's first point of her cross-appeal, Point VI, alleges the trial court erred in its calculation of child support because it used an incorrect amount for Father's income. Specifically, Mother claims the trial court should have included additional income from rentals, interest, and dividends that Father allegedly received. We find no merit in Mother's contentions.

 Mother asserts rental properties produced substantial monthly income which should have been included in the Form 14 calculation. Mother's calculations fail to consider that Father's tax returns revealed net losses from these properties during the years in question. The directions and comments for use regarding Form 14 reveal that "gross income" does include rents received less the ordinary and necessary expenses incurred to produce such receipts. A court *may* exclude depreciation from this calculation, but is not required to do so. *Klockow v. Klockow*, 979 S.W.2d 482, 490[14] (Mo.App. 1998). An appellate court will not disturb the trial court's decision (to include depreciation expenses) unless the evidence supporting it is palpably insufficient resulting in an abuse of discretion. *Id.* at 490. Mother merely assumes a court is required

to exclude depreciation expenses from this calculation. She does not assert the court abused its discretion or that the evidence is insufficient to support the court's determination. Since the rental business operated at a loss, the trial court did not abuse its discretion in failing to include any amounts from the business in its calculation of Father's gross income.

 Mother also alleges the court should have included dividends and interest in its calculation of Father's income. Specifically, Mother points to various investment accounts resulting in additional monthly income. Mother directs this court's attention to Father's tax returns showing interest and dividend income. However, the tax returns were filed jointly with Father's current wife. Father testified that the income was his current wife's income and not attributable to himself.[11] Step-parent income is not considered in the Form 14 calculation for child support. *Thomas v. Thomas*, 989 S.W.2d 629, 636 (Mo.App.1999). The trial court is the sole judge of witness credibility. *In re Marriage of Zimmerman*, 29 S.W.3d 863, 866 (Mo.App.2000). It was free to believe that the interest and dividend income was wholly that of Father's current wife.[12]

The trial court did not err in excluding the rental, dividend, and interest income from the calculation of Father's gross income. Point denied.

*POINT VII: ERRONEOUS ALLOWANCE OF HEALTH INSURANCE COST TO FATHER*

 In this point, Mother asserts the trial court erred when it calculated the

---

**11.** *The tax returns do not delineate from whom the income was derived.*

**12.** We do not ignore Mother's assertions that some of the accounts were in Father's name as well as his wife's name. However, Father testified some accounts belonged solely to his

wife and also he was merely a trustee on one of the accounts. Mother has shown absolutely no evidence that the income, reported on the tax returns, was derived from accounts with Father's name on them or that the accounts even belonged to Father.

presumed child support amount, both retroactively and prospectively, because the court allowed Father a credit of $43 per month for health insurance costs. Specifically, Mother claims error because the judgment ordered her to provide prospective health insurance from the date of the judgment. We agree the trial court should not have allowed the credit to Father for the period he was not required to provide health insurance.

There were two Form 14's produced by Father that were accepted by the court; the first dealt with the period of September 25, 1995 to May 9, 1998 (both children) and the second was for May 9, 1998, until Branton became emancipated (out of college or turned 22). As to the first Form 14, the decree in force during that period ordered Father to provide health insurance. The trial court has the discretion to allow a credit for these amounts paid. *§ 454.603.6; Wagner v. Wagner,* 898 S.W.2d 649, 652 (Mo.App.1995). We find no abuse of discretion.

The second Form 14 allowed Father a credit for the health insurance although Mother was ordered to provide insurance from the effective date of the judgment, i.e., July 5, 2000. Any allowance for insurance beyond this date was error. Pursuant to Rule 84.14, which gives this court the authority to give such judgment as the trial court ought to give and to finally dispose of this case, we amend the portion that allowed Father a credit for health insurance costs from July 5, 2000, until the support obligation ended (Branton was no longer in college or he turned 22). *R.W.B. v. T.W. ex rel. K.A.W.,* 23 S.W.3d 266, 269 (Mo.App.2000). Father's support obligation should be increased by $43 per month to a total of $841 per month beginning July 5, 2000.

Although Mother argues she should be entitled to an insurance credit after January 5, 2000, we have already pointed out that health insurance credits are not mandatory. From the evidence here, we do not see any reason she should be allowed this credit. *See* § 454.603.6; *Wagner,* 898 S.W.2d at 652.

## POINT VIII: ALLEGED ERROR IN INCOME TAX DEPENDENCY ALLOWANCE

In her next point, Mother alleges the trial court erred by failing to modify the dissolution decree to allow her the dependency exemption on her tax returns. Apparently, Mother believes it is a deviation from the presumed correct child support amount (Form 14) to allow the non-custodial parent (Father) to claim the dependency exemption.[13] Therefore, the trial court must make a specific finding that the presumed amount is incorrect. She claims error because the trial court did not do so here.

We believe this exact argument was considered and ruled adversely (to Mother's asserted position here) by this court in *In re Marriage of Eskew,* 31 S.W.3d 543 (Mo. App.2000). We need not readdress this issue as we believe the opinion is based on sound principles, and for the reasons stated in *Eskew,* Mother's point is denied.

## POINT IX: ALLEGED ERROR IN NOT AWARDING MOTHER ATTORNEY FEES

In Mother's final point of her cross-appeal, she alleges the trial court erred because it did not order Father to pay her attorney fees. She bases this on the fact

---

**13.** Mother predicates her argument on an assumption in the Directions and Comments for Use which states: "The schedule of basic child support obligations assumes that the parent entitled to receive support claims the tax exemption for the children entitled to support."

Father has "superior financial resources" and because his "claims were meritless" in that all of them were denied.

 An award of attorney fees is within the sound discretion of the trial court. *In re Marriage of Trimble*, 978 S.W.2d 55, 58[13] (Mo.App.1998). Only upon showing an abuse of the trial court's broad discretion will an appellate court overturn the denial of attorney fees. *Id.* at 58[14]. To show an abuse of discretion, Mother must show the denial was clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.* at 58[15]. Trial courts are considered experts on the necessity, reasonableness, and value of attorney fees. *Webb v. Fox*, 978 S.W.2d 16, 22[21] (Mo.App.1998). Trial courts are required to consider all relevant factors, including the financial resources of both parties, in making this determination. § 452.355.1; *Trimble*, 978 S.W.2d at 58–59.

Mother shows only that Father had a greater income and investments, but fails to address the fact she voluntarily chose not to work because her husband had a substantial income. The financial resources of the parties are but one factor the court considers; it is not a controlling factor. *Thill v. Thill*, 26 S.W.3d 199, 208 (Mo.App.2000); *Ansley v. Ansley*, 15 S.W.3d 28, 36[20] (Mo.App.2000). Mother asserts further that Father should pay for her attorney fees because his claims were meritless. She bases this on the fact they were denied. Mother cites no precedent for the fact that merely because a motion is denied, this equates to the motion being without merit. Our independent research reveals no authority to support such a notion.

Whatever Father's motivations were for filing the motions, the trial court was in the best position to judge his sincerity to have a relationship with his children. The court cited both parties at fault for the deterioration of the relationship. The court further encouraged the "children" (now adults) to be open to establishing a relationship with Father in the future. Mother's attempts to characterize the court's findings that Father was insincere in attempting to gain visitation with his children is tenuous. We find no abuse of discretion in the trial court's denial of attorney fees.

This court reverses the part of the judgment that awarded $798 per month child support to Debra Delight Parmen beginning July 5, 2000, and in lieu of that, this court enters judgment for Debra Delight Parmen and against Donald Harris for child support for $841 per month beginning July 5, 2000, and ending when Branton Harris was either no longer attending college, or was emancipated, whichever first occurred. As amended, the judgment is affirmed.

MONTGOMERY, J., concurs.

BARNEY, C.J., concurs.