John S. BLEVINS, Appellant,

v.

Allison Kay BLEVINS, Respondent.

No. WD 68182.

Missouri Court of Appeals,
Western District.

April 15, 2008.

Mark Hubbard, Platte City, for appellant.

James Boggs, Kansas City, for respondent.

PAUL M. SPINDEN, Presiding Judge.

John S. Blevins appeals the circuit court's judgment to modify his obligation to pay child support for his son and daughter. Blevins complains of several errors in the circuit court's Form 14 calculation. He also asserts error in the court's ordering him to pay one-half of his son's past college expenses. We affirm the circuit court's judgment in part and reverse and remand it in part.

On May 10, 1994, the circuit court ordered Blevins to pay $742 a month in child support. On August 2, 2004, Blevins' former wife, Allison Kay Roberts, filed a motion asking the circuit court to modify Blevins' child support obligation because the children were older, their expenses were greater, and Blevins' income had increased. She also averred that their son's expenses would increase because he was beginning college study that fall. She contended that these changes were substantial and continuing and warranted modification.

After a hearing on Roberts' motion, the circuit court ordered Blevins to pay $1520 a month in child support until his son became emancipated and $1201 a month after then.[1] The circuit court also ordered Blevins to pay half of his son's past college expenses, which the circuit court set at $9350. Blevins appeals.

Roberts moves to dismiss Blevins' appeal on the grounds that Blevins has not yet paid the $9350 and is in arrears on his child support obligation. She contends that a party that is not in compliance with a court's order is not entitled to affirmative relief. She cites *Richman v. Richman*, 350 S.W.2d 733, 735 (Mo.1961); *Staples v. Staples*, 895 S.W.2d 265, 267 (Mo. App.1995); and *O'Neal v. Beninate*, 601 S.W.2d 657, 658 (Mo.App.1980). In *Staples*, this court's Eastern District affirmed

---

1. While this appeal was pending, Blevins' son became emancipated under Section 452.340.5, RSMo Cum.Supp.2006.

the circuit court's dismissing a party's motion to modify maintenance because he had an outstanding maintenance arrearage. 895 S.W.2d at 267. In *O'Neal,* the Eastern District extended this principle to apply to child support orders, but it found that a party's motion to modify could proceed because he was current in his child support payments. 601 S.W.2d at 658–59.

This principle, however, does not apply to Blevins' case. Blevins is appealing an adverse judgment. He is not seeking affirmative relief.[2] None of the cases cited by Roberts stands for the proposition that a party's compliance with a judgment while appeal of that judgment is pending is a prerequisite to the party's maintaining the appeal. We deny Roberts' motion to dismiss the appeal.

■ In his first point, Blevins asserts several errors in the circuit court's calculation of the Form 14 presumed child support amount. We accord the circuit court broad discretion in awarding child support. *MacDonald v. Minton,* 142 S.W.3d 247, 250 (Mo.App.2004). We will not disturb an award unless we find that the circuit court abused its discretion or "that the evidence is palpably insufficient to support the award." *Vendegna v. Vendegna,* 125 S.W.3d 911, 913 (Mo.App.2004).

■ Blevins first argues that the circuit court did not have competent and substantial evidence to support its determination that his monthly income was $9000. Blevins testified that his annual salary from a corporation in which he and his current wife are the only stockholders was $32,500, and he asked the court to find that his gross monthly income was $2708.

Roberts requested that the court use a much higher figure for Blevins' income. She offered Blevins' 2005 corporate tax return, which indicated that the corporation had taken a $150,000 depreciation deduction and a $25,000 travel and entertainment expense deduction that year. On the Form 14 that Roberts offered, she asked that the court find Blevins' monthly income to be $15,475. Roberts testified that she arrived at this amount by adding the depreciation and travel and entertainment expense deductions to Blevins' salary.

Blevins argues that competent and substantial evidence does not support the court's determination that his monthly income is $9000. We agree. If the court arrived at this amount by including a portion of the corporation's depreciation and travel and expenses deductions in Blevins' income, it erroneously applied the law. The directions for completing Form 14 discuss when consideration of depreciation and other deductions is appropriate in determining a parent's gross income:

> If a parent receives rents or royalties or is self-employed, in a sole proprietorship, or business with joint ownership, "gross income" is gross receipts minus the ordinary and necessary expenses incurred to produce such receipts. Depreciation, investment tax credits and other non-cash reductions of gross receipts may be excluded from such ordinary and necessary expenses.

**2.** Indeed, Roberts is the party seeking affirmative relief through the motion to modify child support. Blevins is the defending party. In *Richman v. Richman,* 350 S.W.2d 733, 735 (Mo.1961), the Supreme Court distinguished between making payment of a prior order a prerequisite to granting affirmative relief and making it a prerequisite to the right to defend. While the former involves "the withholding of a favor[,] . . . the latter involves a fundamental constitutional right." Id. The court held, therefore, that the circuit court erred when it struck a former husband's answer to his former wife's dissolution petition on the basis that the husband was not in compliance with a prior temporary child support and attorney fees order. Id.

Form 14, DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, Line 1: Gross Income. In sole proprietorships or partnerships, taxes are not assessed against the business entities, but income and losses, including depreciation, pass through to the individual tax returns of the proprietor, partners, or, in the case of subchapter S corporations, the shareholders. *See Thill v. Thill,* 26 S.W.3d 199, 207 (Mo.App.2000) (discussing effect of depreciation on gross income of parent who was partner in a partnership and shareholder in subchapter S corporations). Depreciation and other deductions can reduce a parent's income from these types of businesses in a way that renders the income listed on the parent's individual tax return as not representative of the true amount of cash or benefit available to the parent and, therefore, available for supporting a child. *Id.*

None of these situations are involved in Blevins' case. Blevins' business was a C corporation—not a sole proprietorship, a business with joint ownership, or a subchapter S corporation. The corporation paid taxes on its income. Hence, the corporation—not Blevins or his wife—received the benefit of the depreciation and travel and entertainment expense deductions. Form 14's directions, permitting the circuit court to consider depreciation and other non-cash reductions of gross receipts determine gross income, did not apply to Blevins' C corporation.

Without the corporation's deductions, the record does not support the circuit court's determination that Blevins' monthly income was $9000. Although the circuit court heard evidence that the corporation had retained earnings and Form 14's directions permit the circuit court to include retained earnings in determining a parent's gross income after considering certain factors,[3] the corporation's retained earnings for 2005 were only $32,000. The inclusion of the entire amount of the corporation's retained earnings would not support setting Blevins' monthly income at $9000.[4]

The evidence was insufficient to support the circuit court's determination that Blevins' monthly income was $9000. We reverse the child support award and remand to the circuit court to determine Blevins' monthly income based on the evidence and to recalculate the child support amount accordingly.

◼ Blevins next argues that the circuit court's Form 14 calculation was incorrect because the circuit court did not impute income to Roberts. The court found Roberts' income to be $2222 a month, based on her testimony that she was working 20

---

3. Form 14's directions provide that the circuit court, in determining whether or not to include retained earnings in a parent's gross income, "shall consider all relevant factors, including (1) [w]hether reinvestment of the business' income is an ordinary and necessary expense to allow the business to operate at a reasonable level; (2) [w]hether reinvestment of the business' income is intended for maintenance of the business or growth of the business; (3) [w]hether reinvestment of the business' income is reasonable based on sound business practices; and (4) [t]he validity of the reasons of the parent for reinvestment of the business' income." Form 14, DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, Line 1: Gross Income. F. COMMENT: *Retained Earnings.*

4. Concerning the corporation's retained earnings, Blevins acknowledged that "he could probably take a larger salary" and that the corporation could issue dividends or pay him a bonus. He testified that he and his wife had chosen instead to put the corporation's retained earnings into improving benefits, paying off debt, and buying equipment. While the circuit court is free to disbelieve Blevins and to include the corporation's retained earnings in his gross income, the evidence must support the amount included.

hours a week and making approximately $27 an hour. Blevins contends that the court should have imputed income to Roberts because she testified that she "probably" could work full-time at the same hourly rate but chose to work only part-time.

Blevins waived any complaints about Roberts' income. In his proposed Form 14 calculation, he did not impute income to Roberts and used Roberts' income based on her working only part-time. Furthermore, Blevins testified that he was asking the circuit court "to be fair" and was "not imputing any additional income that [Roberts] might be making."

■ "A party may not complain on appeal of an error in which that party joined or acquiesced at trial." *In re Marriage of Glueck*, 913 S.W.2d 951, 956 (Mo.App. 1996). Blevins "cannot invite error by filing a Form 14 which had no income imputed to [the other party], and then complain when the trial court did as he requested." *Harris v. Parman*, 54 S.W.3d 679, 685 (Mo.App.2001).

■ Blevins next asserts that the circuit court's Form 14 calculation was erroneous because it included the $304 monthly premium that Roberts paid for additional health insurance as additional child-rearing cost. The circuit court's original judgment had ordered Blevins to maintain the children's health insurance. Blevins provided health insurance for the children.

Roberts acknowledged that Blevins had obtained a health insurance policy that covered the children, but she testified that she chose to buy additional health insurance as extra coverage. Blevins argues that he should not have to pay for both policies. He also contends that Roberts' health insurance policy is not limited to their two children; thus, the circuit court's

including the entire amount of the monthly premium in its Form 14 calculation resulted in his paying a portion of health insurance coverage for Roberts' husband.

■ The circuit court has the discretion to order both parents to provide health insurance benefits for the children. *Nelson v. Nelson*, 25 S.W.3d 511, 522 (Mo. App.2000) (citing Section 454.603.7, RSMo). Blevins does not deny that the additional health insurance is beneficial to the children. *Lenger v. Lenger*, 939 S.W.2d 11, 13 (Mo.App.1997). We find that the circuit court did not abuse its discretion in including the cost of extra health insurance coverage as additional child-rearing costs in its Form 14 calculation.

The record is unclear, however, concerning whether or not the $304 monthly premium was for coverage for only Blevins' children. Roberts testified that the health insurance policy was "for the family for extra coverage." If Roberts intended her reference to insurance for the "family" to include herself and her husband, the circuit court erred by not limiting Blevins' responsibility to that portion of the monthly premium attributable to covering children only. Form 14, DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM No. 14, Line 6c: Health insurance costs. We remand for the circuit court to receive evidence on this issue and to recalculate the child support amount accordingly.[5]

Blevins' remaining points allege error in the circuit court's ordering him to pay half of his son's past college expenses. The circuit court's original judgment was silent concerning the parties' obligation to pay for the children's college expenses. Blevins' son had completed six semesters of

5. Because Blevins' son is emancipated, the circuit court should determine the portion of

the health insurance premium attributable to one child.

college and, according to Roberts, had accrued approximately $22,000 in college expenses. Blevins had contributed $3300 toward those expenses.

In his answer to Roberts' motion to modify, Blevins said that he was willing to pay half of his son's college expenses. He testified that he had "every intention" of paying his share of his son's college expenses if Roberts would send him an itemized statement showing what those expenses were. During cross-examination, Blevins reiterated his willingness to pay half of his son's college expenses if Roberts would give him an itemized statement:

Q. ... Well, you've said to the judge that you want to pay half?

A. Yes, sir.

Q. But is it fair to say that with the exception of one $300 payment in January of '05, you've paid nothing else in '05?

A. You keep asking me the same question. I'm sorry[. W]hen I get an itemized statement, I will write her a check immediately. That's all I've ever asked for. But I don't know what the amount is. I can arbitrarily send her money, but that really doesn't make sense to me.

Q. If the amount is some $22,000 and you've paid [$3000], are you saying to the court that it's fair that you pay half of [$19,000]?

A. Yes, sir. I would agree to that.

Based on this exchange, the circuit court found that Blevins "testified that he would pay fifty percent of $22,000 of college expenses for the elder child less $3,300 he had previously paid." The court ordered Blevins to pay $9350.

■ Blevins argues that the circuit court erred by ordering him to pay any of his son's past college expenses because his son did not comply with Section 452.340.5,

RSMo Cum.Supp.2006. A child who has reached 18 years of age and is attending college must satisfy Section 452.340.5's requirements to remain eligible for continued parental support. The child must give each parent at the beginning of each semester a transcript or similar official document from the college showing the courses in which the child is enrolled and those the child has completed for each term, the child's grades and credits for each course, and an official document from the school listing the courses in which the child is enrolled for the upcoming term and the number of credits for each course.

Blevins contends that, despite his repeated requests, he has never received a copy of his son's transcript or any other official document from the college showing his son's enrollment in courses, completed courses, grades, and credits. Blevins asserts, therefore, that he should not have to pay any of his son's past college expenses.

The son's noncompliance with Section 452.340.5 rendered him ineligible for continued parental support under the statute. *In re Marriage of Kohring,* 999 S.W.2d 228, 233–34 (Mo. banc 1999). Nevertheless, Blevins repeatedly represented to the court that he was willing to pay half of his son's past college expenses. Blevins testified that his complaint was not that his son was not providing him with enrollment and transcript documents but that he did not want to "involve" his son in his and Roberts' dispute over payment of college expenses. Blevins stressed that the only reason that he had paid only $3300 was because Roberts had not provided him with an itemized statement detailing his son's college expenses.

The circuit court reasonably could have interpreted Blevins' testimony to be that, despite his son's failure to comply with Section 452.340.5, he was consenting to pay half of his son's college expenses if Rob-

erts would give him an itemized statement detailing those expenses. Roberts offered into evidence statements itemizing her son's expenses for his first six semesters of college to be $22,249. Roberts, therefore, satisfied Blevins' condition for paying. Because Blevins acquiesced to paying half of the past college expenses, he cannot complain on appeal. *Glueck,* 913 S.W.2d at 956.

■ The circuit court, however, erred in calculating Blevins' share of the expenses at $9350. The circuit court found that Blevins' son had accrued $22,000 in past college expenses and that Blevins had paid $3300 toward those expenses. The circuit court subtracted $3300 from $22,000, divided the remainder, $18,700, in half and ordered Blevins to pay $9350.

As conceded by Roberts, the circuit court's calculation did not give Blevins full credit for the $3300 that he paid. The circuit court should have divided the total expenses, $22,000, before subtracting $3300 from his $11,000 share. The correct amount was $7700. We reverse the portion of the circuit court's judgment ordering Blevins to pay $9350 for his son's past college expenses and remand for the court to adjust the amount to $7700.

JOSEPH M. ELLIS, Judge, and THOMAS H. NEWTON, Judge, concur.