**C. David ADAMS, Appellant–Respondent,**

v.

**Janet D. ADAMS, Respondent–Appellant.**

**Nos. WD 61491, WD 61531.**

Missouri Court of Appeals, Western District.

July 1, 2003.

Monica D. Hutchinson, Warrensburg, MO, for Appellant.

Donald Lee Davis, Kansas City, MO, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR., and EDWIN H. SMITH, JJ.

JAMES M. SMART, JR., Judge.

Charles Adams ("Husband") appeals the trial court's judgment dissolving his marriage to Janet Adams ("Wife") as to maintenance, child support, and attorneys' fees. In a cross-appeal, Wife appeals the trial court's judgment as to division of marital property and attorneys' fees. We affirm in part and reverse in part. The parties' points related to the attorney's fee award are affirmed pursuant to Rule 84.16(b).[1]

## Statement of Facts

The parties were married on September 12, 1980. Sixteen years later, on September 18, 1996, one child was born of the marriage, Jennifer Nicole Adams. The parties separated on or about March 15, 2001, and Husband filed his petition for dissolution of marriage on April 6, 2001. Wife filed an answer and cross-petition for dissolution, alleging, *inter alia*, that she required maintenance because she is unable to work due to a medical condition.

Wife had suffered severe injuries in 1996 during the birth of Jennifer, which resulted in her medical disabilities of fecal incontinence, depression, and backache. Wife did not return to work after Jennifer's birth because of these medical conditions, and the disability has, she said, rendered her unable to maintain gainful employment since that time. At the time of trial, Wife was receiving $798.00 a month from Social Security for herself and $398.00 a month for Jennifer. The Social Security benefits were granted for Jennifer because of Wife's disability.

At trial, Dr. M.K. Shridharani testified in behalf of Husband that, based on his examination of Wife and after review of her medical records, he believed that Wife's fecal incontinence was mild. The doctor opined that there were two options available to correct her problem with fecal incontinence: sphincteroplasty (an attempt to repair her sphincter muscle) and a colostomy.

Vocational rehabilitation consultant Terry Cordray testified (also in behalf of Husband) that, although he did not examine Wife personally, he was able to reach a conclusion about her ability to work based on depositions, medical records, job postings, and various treatises and resources

---

1. Our discussion of the attorney's fee award lacks precedential value. The parties are furnished a separate memorandum concerning the basis of our decision affirming the award.

used in his profession. Mr. Cordray determined that Wife was capable of engaging in "competitive employment" at the sedentary to light level in an entry-level job for forty hours per week.

Bud Langston, a vocational rehabilitation specialist who testified for Wife, voiced the opinion that Wife could not return to work on a regular basis due to her disabilities, especially the fecal incontinence. Wife testified extensively with regard to her medical problems and the treatments she has undergone since being injured in 1996. Wife testified that she is unable to work due to her disabilities. She testified that she had already undergone surgery to repair her sphincter muscle and that it had not alleviated her fecal incontinence. She stated that the surgery had made her condition worse in some respects. Wife testified that a colostomy, a very extreme procedure, was "not an option" for her. Husband expressed the opinion that Wife could work at least part time to supplement her income from Social Security and that if she did so, she could earn approximately $749.00 per month. That, in addition to her disability benefits, he said, would bring her monthly income up to $1,547.00, not including Jennifer's Social Security or child support.

The parties both presented income and expense statements to the court. Wife's statement showed that her monthly expenses for both her and Jennifer totaled $2,236.00. Wife stated her net income as $1,196.00, which was the combination of her disability benefit of $798.00 and Jennifer's benefit of $398.00. Husband's income and expense statement showed his net monthly income as $3,486.40, and his monthly expenses for both him and Jennifer totaled $2,962.57.

Both parties also presented their own Form 14's showing their calculations for child support. The trial court rejected both parties' Form 14's and submitted its own. The trial court's Form 14 showed Wife's monthly gross income and adjusted gross income as $798.00, the amount of her Social Security disability benefit, and Husband's monthly gross income and adjusted gross income as $3,486.00. Based on these figures, the court arrived at a presumed child support amount of $421.00 to be paid by Husband. The court made no provision for the Social Security benefit received on behalf of Jennifer, nor did it include any adjustment for maintenance payments.

The court, in its judgment of May 24, 2002, found that the best interests of the child would best be served by placing her in the joint legal and physical custody of both parties. The court's parenting plan closely followed the plan submitted by Husband and is not challenged on appeal. The court adopted its own Form 14 as correct, stating that it found no reason to deviate from those calculations, and ordered Husband to pay $421.00 per month for child support.

In dividing the marital property and debts between the spouses, the court granted the family home to Husband and included $10,774.00 cash in Wife's portion of the property division. The court found that the value of the family home was $72,500.00 and that Husband should retain the property and assume the debt on it, which amounted to $61,628.00. The court found that the marital portion of Husband's military pension, which was not yet fully vested at the time of trial, should be divided equally between the parties. The pension division is not contested on appeal. With regard to debts, the court found that certain debts, which were incurred by Wife after separation, were "squandered" and should be paid by her. The debts that were found by the court to be marital and joint were divided between the parties.

The court found that Wife was in need of maintenance and that Husband was capable of paying $283.00 per month as and for maintenance. The order of maintenance was based on the court's findings (1) that Wife lacks sufficient property to provide for her reasonable needs; (2) that Wife suffers from a medical condition such that she is unable to support herself through appropriate employment; (3) that Wife has reasonable needs for herself and the parties' child in the amount of $1,900.00 per month; (4) that Wife has a monthly income of $1,617.00, which consists of $798.00 in Social Security benefits for herself, $398.00 in Social Security benefits for Jennifer, and child support from Husband in the amount of $421.00; and (5) that Husband is capable of meeting his own needs while providing $283.00 per month in maintenance to Wife.

Finally, the court ordered Husband to pay $5,000.00 of Wife's attorneys' fees (which totaled over $16,000.00).

This appeal follows.

## Standard of Review

■ The appellate court will affirm a judgment of dissolution unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or erroneously applies the law. *Thomas v. Thomas*, 76 S.W.3d 295, 299 (Mo.App.2002) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The burden of demonstrating error falls on the party challenging the dissolution decree. *Childers v. Childers*, 26 S.W.3d 851, 853 (Mo.App.2000). This court views the evidence in the light most favorable to the decree, disregarding contrary evidence and deferring to the trial court even if the evidence could support a different conclusion. *Carter v. Carter*, 869 S.W.2d 822, 830 (Mo.App.1994).

## Maintenance

■ In his first point, Husband contends that the trial court erred in awarding maintenance because the greater weight of the evidence showed that Wife is capable of at least part-time employment, that part-time income in the amount of $749.00 should have been imputed to her, and that that income coupled with her Social Security benefits would provide for her reasonable needs, and because Husband lacks the ability to pay the award of maintenance.

In a dissolution proceeding, a court may grant an order of maintenance only after finding, pursuant to Section 452.335.1, RSMo 2000,[2] that the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) is unable to support himself through appropriate employment. *McIntosh v. McIntosh*, 41 S.W.3d 60, 67 (Mo. App.2001). Once this two-part threshold test is met, the court then determines the amount and duration of maintenance after considering all relevant factors, including those specified in Section 452.335.2. *Hatchette v. Hatchette*, 57 S.W.3d 884, 891–92 (Mo.App.2001).

Here, the trial court found that Wife was entitled to maintenance because she met the two-part threshold test. The court specifically found that Wife lacks sufficient property to provide for her reasonable needs and that Wife suffers from a medical condition such that she is unable to support herself through appropriate employment. The court found that Wife has reasonable needs for herself and the parties' child in the amount of $1,900.00 per

2. All statutory references are to Revised Statutes of Missouri, 2000, and all rule references are to Missouri Rules of Civil Procedure (2002), unless otherwise indicated.

month; that Wife has a monthly income of $1,617.00, which consists of $798.00 in Social Security benefits for herself, $398.00 in Social Security benefits for Jennifer, and child support from Husband in the amount of $421.00; and that Husband is capable of meeting his own needs while providing $283.00 per month in maintenance.

Husband concedes that there is no question that, at the time of trial, Wife lacked sufficient property to provide for her needs. However, Husband contends that the greater weight of the evidence showed that she could return to work on at least a part-time basis.

This court is required to view the evidence in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Thomas,* 76 S.W.3d at 300. Wife presented substantial evidence to show that she is unable to return to work. She testified extensively with regard to the medical problems, including fecal incontinence due to a tear in her sphincter muscle, depression, and severe back pain. She testified that the back pain prevents her from sitting to sew or work on the computer; that she cannot return to work at any of the jobs she held prior to her injury; that due to the fecal incontinence she has three to four accidents per day that require her to shower promptly; and that her post-injury attempts at baby sitting were hampered by the incontinence. Wife testified that she had undergone surgery to repair her sphincter muscle and that it had made her condition worse rather than better in some respects.

Wife also presented the deposition testimony of Bud Langston, a vocational rehabilitation specialist, who expressed the opinion that Wife cannot return to work on a regular basis. Mr. Langston relied on his interview with Wife; a review of her medical records; various treatises, hand-books, and other resources used in the field; and his own training and experience. Medical records relied upon by Mr. Langston included those from University of Kansas Medical Center, Whiteman Air Force Base Hospital, and Johns Hopkins Hospital. Mr. Langston's opinion that Wife was unable to work on a regular basis was primarily based on the problems she would likely encounter on the job as a result of her fecal incontinence, but also on her mental health problems and her back pain. Wife also submitted a copy of the Social Security disability determination that Wife is unable to work due to her medical condition and mental health problems. All of the foregoing evidence was certainly substantial evidence which the trial court could reasonably have found to be probative. We cannot say that the weight of this evidence was overwhelmed by the testimony of the two experts Husband presented.

Husband correctly points out that the trial court is not bound by the decision of the Social Security Administration with regard to Wife's physical ability to work, citing *Pemberton v. Pemberton,* 756 S.W.2d 660, 663 (Mo.App.1988). Husband acknowledges that such a decision is admissible as evidence that the trial court may consider. *Id.* at 661; *see also In re B.S.B.,* 76 S.W.3d 318, 331 (Mo.App.2002) (Social Security determination was "of considerable importance" in case involving termination of parental rights). Here, there is no indication that the court reached its decision because it believed it was bound by the Social Security determination. Thus, we fail to discern error on the part of the trial court.

■ Husband complains that Wife presented no objective medical evidence at trial that she is unable to work. He says that the evidence she did present, *i.e.,* the deposition testimony of Bud Langston, was

inadmissible because it was not based upon a "reasonable degree of certainty." The trial court is granted broad discretion as to the admissibility of expert testimony. See *Kell v. Kell,* 53 S.W.3d 203, 209 (Mo.App. 2001). Husband fails to show that the trial court could not reasonably conclude, in its discretion, that the opinions were offered with a reasonable degree of certainty. Husband fails to show that the exact terminology must be used. *See Goodwin v. Farmers Elevator and Exch.,* 933 S.W.2d 926, 929 (Mo.App.1996). Husband also failed to object to the form of the question at the time of the taking of the deposition. Such failure to object at the time of the deposition waives the objection. *Schiles v. Schaefer,* 710 S.W.2d 254, 262 (Mo.App. 1986). For those reasons, the trial court could reasonably have regarded Langston's testimony as substantial evidence related to Wife's ability to work.

Husband contends that the court erred in not imputing additional income to Wife in the amount of $749.00, an amount he says she could earn if working part time. "A trial court *may* impute income to a spouse based upon what he or she could earn using his or her best efforts to gain employment suitable to his or her capabilities." *In re Marriage of Cranor,* 78 S.W.3d 150, 157 (Mo.App.2002) (emphasis added). However, imputing income depends upon the facts and must be determined on a case-by-case basis. *Hill v. Hill,* 53 S.W.3d 114, 117 (Mo. banc 2001). Given the court's specific finding in this case that Wife "suffers from a medical condition such that she is unable to support herself through appropriate employment" (which we will not disturb), we cannot discern error in failing to impute income to wife.

Wife presented substantial evidence from which the court could have found that she was entitled to maintenance. The trial court is granted broad discretion with regard to maintenance orders. *Childers,* 26 S.W.3d at 853. The party challenging an award of maintenance has the burden of showing that the trial court abused its discretion in giving the award. *Shelton v. Shelton,* 29 S.W.3d 400, 404 (Mo.App.2000). Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances and is sufficiently arbitrary and unreasonable as to shock the sense of justice. *Hatchette,* 57 S.W.3d at 888. Where, as here, there is "[a] gross and permanent disparity between the parties' ability to work and earn," that "is also a sound reason for an award of maintenance." *Thomas,* 76 S.W.3d at 301.

Husband alleges that he cannot afford to pay maintenance after meeting his and Jennifer's reasonable needs. The court specifically found that Husband is capable of meeting his own needs while providing maintenance in the amount of $283.00 per month. In maintenance determinations, the dissolution court is not required to accept a party's statement of expenses, even when the evidence is uncontradicted. *Myers v. Myers,* 47 S.W.3d 403, 409 (Mo.App.2001).

Finally, Husband alleges that the trial court improperly included Jennifer's reasonable needs in arriving at its determination that Wife was in need of $283.00 in maintenance. We agree. The judgment states that Wife "has reasonable needs for herself *and the parties' minor child* in the amount of $1,900.00 per month." [3] (Emphasis added.) The child's needs should not be included in the maintenance calcula-

---

**3.** This amount does not correspond with Wife's income and expense statement, and the judgment does not reveal how the court arrived at this figure.

tion. See *Cohen v. Cohen,* 73 S.W.3d 39, 51 (Mo.App.2002) and *Nichols v. Nichols,* 14 S.W.3d 630, 637 (Mo.App.2000). However, the trial court, in calculating maintenance, also included in Wife's *income* the amount she would receive for child support from Husband and the amount Jennifer receives from Social Security due to Wife's disability. It makes sense that if the child's needs are not included in the maintenance calculation, income received on behalf of the child, including child support, also is *not* to be included in the calculation of maintenance. See *Cohen,* 73 S.W.3d at 51; *Crawford v. Crawford,* 986 S.W.2d 525, 529 (Mo.App.1999). The child's Social Security benefits "are the property of neither the husband nor the wife and are not part of the marital estate." *Wilk v. Wilk,* 781 S.W.2d 217, 223 (Mo.App.1989).

Since maintenance was improperly calculated by including the reasonable needs of the child and by including in Wife's income the child support and the Social Security benefits for the child, the case should be remanded to the trial court for recalculation of maintenance. As will be seen in the discussion of Point III, it is also necessary that the cause be remanded for recalculation of the child support amount in that the Form 14 calculation must include the recalculated maintenance amount.

### Imputing Income for Child Support

■ Closely related to his first point, Husband's second point on appeal asserts that the trial court erred in its calculation of child support because the award was against the weight of the evidence in that the greater weight of the evidence showed that Wife is capable of working at least part time which would allow her to contribute a greater amount toward the support of the minor child.

■ The trial court has broad discretion in ordering child support. *Keller v. Keller,* 18 S.W.3d 589, 593 (Mo.App. 2000). This court, in reviewing an award of child support, has stated that it would not substitute its "judgment for that of the trial court absent a manifest abuse of discretion" and that it would "not disturb an award of child support unless the evidence is palpably insufficient to support it." *Haden v. Riou,* 37 S.W.3d 854, 860 (Mo.App. 2001). In reviewing such awards for an abuse of discretion, we are required to view the evidence in a light favorable to the decree, "disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Keller,* 18 S.W.3d at 593.

Husband makes the same argument in this point as in Point I, *i.e.,* that Wife did not present substantial evidence to support the trial court's determination that Wife is unable to work. Husband contends that the court, therefore, abused its discretion by failing to impute income to Wife for purposes of calculating child support in this case.

In this case, where we have already determined that the court did not err in determining that Wife was not capable of employment, we cannot say that the court abused its discretion in failing to impute income to Wife for purposes of calculating child support. Point denied.

### The Court's Form 14 Child Support Calculation

■ In his third point, Husband complains that the trial court erred in calculating the amount of child support for which he is responsible. He claims first that the court did not follow the Form 14 instructions with regard to including maintenance. Rule 88.01 mandates the use of Form 14 and its *Comments, Directions for Use* in calculating child support. The

court rejected both parties' proffered Form 14's, then calculated its own, adopted that Form 14, and incorporated it into the judgment. See *Woolridge v. Woolridge*, 915 S.W.2d 372, 381 (Mo.App. 1996).

The Form 14 Direction for line 2b requires the inclusion of "the monthly amount of any court order for maintenance ... actually being paid" as an adjustment to gross income. In this case, the court was establishing both child support and maintenance; therefore, Comment A of the Form 14 Directions related to Line 2b is applicable. It states:

> If the court is establishing both child support and maintenance, the court *shall first determine the appropriate amount of maintenance.* This amount shall be *included in the gross income (line 1) of the parent receiving* the maintenance and *as an adjustment (line 2b) of the parent paying* the maintenance. (Emphasis added.)

The trial court in this case did not follow these directions in completing its Form 14. First, the court did not make any provisions in its Form 14 calculation for maintenance, and, second, it appears that the court determined the amount of child support before establishing the appropriate amount of maintenance. This is evident in that the court included the $421.00 child support amount in Wife's gross income in its calculation of maintenance but did not include a amount for maintenance in the child support calculation.

The court misapplied the law in failing to properly calculate its Form 14. Therefore, the case must be remanded to the trial court for it to correctly recalculate the child support amount to include the amount of maintenance to be paid according to the applicable Form 14 *Comments, Directions for Use.* The court must first recalculate the amount of maintenance us-

ing only Wife's reasonable needs and Wife's income and not including the child's needs or income, as discussed in Point I.

Husband's second complaint about the child support calculation is that when the trial court made its child support calculation, it did not state whether or not it considered the fact that the parties' minor child receives $398.00 per month in Social Security disability benefits. Husband complains that the court's Form 14 does not reflect consideration of the disability benefits.

There is no requirement under Rule 88.01 that the income of children be included in the Form 14 computation. However, Section 452.340.1(1), states that the "financial needs and resources of the child" should be considered as a relevant factor when calculating child support, and Comment F to Line 12 of Form 14 ("Presumed child support amount") explains when a child's income should be considered. It states:

> In a proceeding to establish a child support order ... *when determining whether to deviate* from the presumed child support amount (line 12), the court or administrative agency should consider all relevant factors, including whether:
>
> (1) *a child receives income that is not based on the child's special needs[.]* (Emphasis added.)

Rule 88.01 establishes a rebuttable presumption that child support calculated according to Form 14 is the correct amount of child support to be awarded by the trial court. *Harris v. Parman*, 54 S.W.3d 679, 685–86 (Mo.App.2001). The court may rebut the presumed correct child support amount as unjust or inappropriate. See *Woolridge*, 915 S.W.2d at 378–79; Rule 88.01.

Many factors must be considered by the court in determining whether the pre-

sumed correct child support amount is unjust or inappropriate. See Comment F to Line 12, Form 14 *Comments, Directions for Use.* Children's income is one of the factors to be considered. *Harris,* 54 S.W.3d at 685. There is, however, "no formula respecting the weight that the trial court should give this or any other relevant factor in deciding whether to deviate from the presumed child support amount." *Id.*

Husband admits that there is a "lack of instructive law" on the matter, but cites *In re Marriage of Amos,* 843 S.W.2d 946 (Mo. App. S.D. banc 1992), for the proposition that the Social Security benefits are not to be included in the income of either of the parents.[4] The *Amos* court also indicated, however, that the benefits are income that must be *considered* by the court in determining child support. *Id.* at 955 (citing *Wilk v. Wilk,* 781 S.W.2d 217, 223 (Mo. App.1989)).

The matter of the child's Social Security benefit was addressed in *Weaks v. Weaks,* 821 S.W.2d 503 (Mo. banc 1991). In that case, *Weaks* involved Social Security benefits received by the custodial parent for the benefit of the children as a result of the *disability of the non-custodial parent. Id.* at 504. Stating that the purpose of the benefits is to replace income lost due to the disabled person's inability to work, the Court concluded that it would be *"inequitable to withhold a credit against the child support obligation[,]"* where "[t]he parent charged with the support obligation may have no ability to satisfy that obligation other than through the governmental disability payments[.]" *Id.* at 506. Furthermore, the Court reasoned, "[i]n situations involving disability benefits, the party seeking credit most likely faces a reduction of income, financial uncertainty, physical or mental impairment and other attendant consequences of the disability." *Id.*

*Weaks* held that a parent charged with a support obligation is entitled to a credit toward that obligation for Social Security disability benefits *derived through that parent's account. Id.* at 505–06. Here, it is Wife's Social Security account from which Jennifer's benefits are derived and it is Wife who "faces a reduction of income, financial uncertainty, physical or mental impairment and other attendant consequences of the disability." For the court to have included Jennifer's Social Security benefits in Husband's child support calculation would have had the effect of reducing the amount of child support being paid by Husband. Given that Jennifer's Social Security payments are intended to replace income from Wife, we cannot say that the court was required to give a credit to Husband for the amount of benefits the child receives due to Wife's disability.

■■■■ The court here specifically found that there was no reason to deviate from its Form 14 calculation. The court was aware of the $398.00 in Social Security disability benefits received on behalf of Jennifer, but elected not to include it in the child support calculation. "As a reviewing court, we presume the trial court considered all the evidence and followed the law in making its decision on child support unless such presumptions were refuted by the record." *Harris,* 54 S.W.3d at 685. Husband fails to show there was an abuse of discretion. *Wilk,* 781 S.W.2d at 223.

4. The *Amos* court found that the Direction for Use for Line 1 of Form 14, which states that "gross income includes income from social security benefits," applies only to "social security benefits to which a parent is entitled in his or her own right, not social security benefits which are the entitlement of children whose support is to be determined" by use of Form 14. 843 S.W.2d at 955.

## Division of Marital Property—Cash

In her cross-appeal, Wife first asserts that the trial court erred in including in the division of property an amount of cash ($10,774.00) that was no longer in existence at the time of trial.

As a general rule, the appropriate date for valuing marital property in a dissolution proceeding is the date of trial. *Wright v. Wright*, 1 S.W.3d 52, 62 (Mo. App.1999). "[A] trial court cannot include the value of a marital asset that no longer exists in its division of marital property where one spouse has used that asset for his or her living expenses following separation...." *Id.* An exception to this rule exists where a spouse is found to be "secreting" or to have "squandered" marital assets in anticipation of the dissolution. *Conrad v. Conrad*, 76 S.W.3d 305, 314 (Mo.App.2002). In such a case, the court may hold that party liable for the value of those assets by awarding them to him or her in the division of marital property, thereby effectively reducing that party's property award by the squandered amount. *Id.*

In *Conrad*, the court reaffirmed the general rule and the exception with regard to this issue, but noted that the courts have been inconsistent in assigning the burden of proof on this issue. *Conrad*, 76 S.W.3d at 314–15. In an effort to clear up the matter, the court declared:

[A] spouse, claiming that a marital asset is being secreted or was squandered by the other spouse in anticipation of a dissolution proceeding, must introduce evidence demonstrating that there existed at some point a marital asset, which is being secreted or was squandered. While the burden of proof would remain with the spouse claiming that the other spouse was secreting or had squandered the marital asset in question, the burden of going forward with the evidence would then shift to the other spouse to "account" for the claimed secreted or squandered asset by presenting evidence as to its whereabouts or disposition.

*Id.* at 315.

The husband in *Conrad* offered no evidence at trial to counter the wife's claim that she had spent marital assets to meet her daily living expenses during the separation, and nothing at trial indicated he was contending that she was secreting or had squandered the assets. *Id.* at 316. Given the lack of a record from which the appellate court could decide the issue, the *Conrad* court reversed and remanded for the trial court to fully develop the record and to then rule on whether the amount in question had been secreted or squandered by the wife. *Id.* at 317.

In this case, the trial court assessed Wife $10,774.00 as marital property. This award effectively reduced her actual property award. The court did not indicate in its judgment that it did so because it believed Wife had secreted or squandered the money. Wife took the $10,774.00 from the parties' joint bank account when she separated from Husband and deposited it into an account in her own name. Wife contends, though, that any cash she took at the time of separation was gone well before trial.

Wife also introduced evidence at trial that she used the proceeds to pay off marital debt and for daily living expenses. Specifically, she testified that she paid $400.00 to Husband to finish paying off a computer that was in his custody and $3,000.00 on the couple's Providian credit card bill. She also introduced as exhibits her bank statements and copies of her checks to show that she used the proceeds for living expenses.

The burden at this point, then, was on Husband to show that Wife had secreted or squandered the asset by responding to Wife's evidence. *Id.* at 316. Here, as in *Conrad,* Husband never alleged at trial— nor on appeal—that Wife secreted or squandered the money. In fact, the only mention of "squandering" is in the court's judgment in which it found that certain *debts* were incurred by Wife after separation and *those* were "squandered by Wife and should be paid by her."

Wife opened a bank account in her own name on March 15, 2001, coinciding with the time of the parties' separation. Wife paid some marital debts and her daily living expenses out of that account. But because of the number of transactions involving cash, it is difficult to account for much of the money. The account was depleted more than six months before trial. Wife added her boyfriend to the bank account for a period of time. Some of his expenses were paid out of the account, and she testified also that some of the money deposited into the account was from him. For all these reasons, following the money trail after the parties' separation in this case is difficult at best.

It also is not clear how much each party was awarded in the division of assets and debts. The trial exhibits on which the court relied, and which are incorporated into the judgment, do not purport to show the valuation of several items of debt. Husband contends that the trial court divided the property essentially equally between the parties by awarding Wife total equity in the amount of $10,621.00 and awarding him total equity in the amount of $10,685.00. Wife, on the other hand, claims that Husband was awarded property with a net value of $6,692.00 compared to hers, which she says has a negative value of −$6,104.00.

We cannot discern whether the court assigned the $10,774.00 to Wife because it believed she had secreted or squandered the asset. Furthermore, the judgment does not make clear the exact values applicable to the division of marital assets and liabilities so that we may determine whether the division was equitable. This lack of information precludes meaningful appellate review. The cause, therefore, must be reversed and remanded to the trial court, as was necessary in *Conrad,* to fully develop the record on this issue and to then rule on whether the amount in question had been secreted or squandered by Wife. The court may also make any adjustments to the division of marital property it then deems necessary.

### Division of Marital Property— Marital Residence

■ Next, Wife alleges that the trial court erred in awarding Husband the marital residence in that the court failed to consider "all relevant factors," *i.e.,* that Wife is disabled, has limited economic resources, and has "residential custody" of the parties' minor child.

Husband contends that Wife's point relied on is not in compliance with Missouri Supreme Court Rule 84.04 and asks the court to dismiss it because it does not cite the legal reasons for her claim of reversible error as required by subsection (d) of the rule, and thus preserves nothing for review, citing *Rix v. Rix,* 78 S.W.3d 239 (Mo.App.2002). Wife has filed a motion (taken with the case) to amend her brief to comply with the Rule. Because Wife's argument under this point is sufficient to inform this court and opposing party of the precise matters presented for review, we deny both motions.

■ The trial court is granted broad discretion in determining the distribution of marital property. *Silcox v. Silcox,* 6

S.W.3d 899, 904 (Mo. banc 1999). We will not reverse the court's decision unless we find the division "so heavily weighted in favor of one party as to amount to an abuse of discretion." *Keller*, 18 S.W.3d at 594.

Wife contends that application of the factors in section 452.330.1 to her case reveals that her financial resources are limited; that she contributed equally to the house payments when she was employed; that she maintained the house during the marriage; and that because the court placed Jennifer in her "residential custody," she has greater need of a place to reside with her child than does Husband. She also points out that the record reflects misconduct by Husband during the marriage by engaging in extra-marital affairs and misconduct during the litigation by filing frivolous pre-trial motions. Based on these considerations, Wife asserts that it was an abuse of discretion for the trial court to award Husband the marital residence.

Husband responds that Jennifer will be in his custody a significant period of time, including every other weekend, nine consecutive weeks in the summer, almost a week during the December holiday season, and on major holidays throughout the year. Husband testified that he wanted to keep the marital residence, that he was willing to take on the debt on the property, that he had cared for the residence since the separation, and that Wife testified at trial that she desired to sell the home and split the proceeds. Finally, Husband asserts that despite awarding him 100% of the marital residence, the trial court did not abuse its discretion because the division of property is essentially equal when the value of the property and the debts are considered.

The judgment does not reflect the court's exact reasoning in awarding the house to Husband. However, we note that Husband testified that he wanted the property awarded to him and would take on the debt associated with it. Wife on the other hand, testified that she wished the property to be sold and divided equally between the parties. Thus, we fail to see an abuse of discretion in the award of the residence. However, the court utilized the award of the residence to offset the apparently non-existent $10,774.00 cash awarded wife. Because this cause must be remanded to the trial court for reconsideration of awarding the $10,774.00 to Wife, the court may find it necessary to reconsider the equitable division of other marital property, including the marital residence.

### Conclusion

In accordance with the foregoing opinion, the judgment is reversed and remanded as to the calculation of maintenance, calculation of child support, and division of marital property. The judgment is affirmed in all other respects. The attorney's fee award is affirmed pursuant to Rule 84.16(b). Husband's motion to dismiss Wife's appeal for non-compliance and Rule 84.04 is denied. Wife's motion to file amended brief is denied. Each party shall bear its own costs on appeal.

LOWENSTEIN and SMITH, JJ., concur.