**Joseph M. VENDEGNA, Respondent,**

v.

**Gail Marie VENDEGNA, Appellant.**

**No. WD 61982.**

Missouri Court of Appeals,
Western District.

Feb. 3, 2004.

Ralph Gregory Gore, Independence, MO, for Appellant.

Christine Marie Donnelly, Blue Springs, MO, for Respondent.

Before VICTOR C. HOWARD, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Gail Vendegna ("Mother") appeals the judgment of the trial court dissolving her marriage to Joseph Vendegna ("Father") with respect to the award of child support and the tax exemptions. We vacate the judgment and remand the case.

## Factual Background

Gail and Joseph Vendegna were married in February of 1985. Two children were born during the marriage. Both children suffer from cystic fibrosis. The parties began living apart in August of 1993. In December of 2001, Father filed for dissolution of the marriage. During the years of separation, the children lived with Mother at the couple's home in Lee's Summit, Missouri. Father lived in Colorado until moving to St. Joseph, Missouri, just prior to the dissolution hearing.

From 1999 to July of 2002, Father was employed as a new car sales manager at a dealership in Colorado. Father was fired from this position about a month before the dissolution hearing as a result of a dispute with his employer. At the time of his termination, Father's income was $9,900 per month. Just twenty-four days prior to trial, Father moved to Missouri to start a new job at an auto dealership in St. Joseph. Father's starting salary at his new job was $5,000 per month, plus the use of a demonstrator vehicle, which he valued at $300 per month.

Father testified at trial that his annual income for the three years prior to the dissolution had been $99,000, $107,000, and $126,000. Mother was self-employed as a housekeeper at the time of trial, with a monthly income of $1,397. Father testified that he would have health insurance available for the children through his new employer beginning in October of that year. He was carrying COBRA insurance from his previous employer until the new insurance went into effect.

During the couple's separation, Father made the $650 per month payment on the Missouri house and sent Mother $1,200 each month for the support of herself and the children. Father testified that he also paid the taxes and insurance on the house and paid for upkeep and repairs. Father

maintained health insurance on the children through his employer in Colorado, but many of the children's medical expenses were not covered by his Colorado insurer since they received medical treatment in Missouri. Father paid for all of the children's uninsured medical expenses.

Father and Mother each submitted a Form 14 to the trial court with their own calculations of the presumed child support amount. Included in Father's Form 14 were his "additional child-rearing costs" of $577.00 for health insurance; uninsured extraordinary medical costs of $800.00; and "other extraordinary child rearing costs" of $650.00, which is the monthly payment on the Lee's Summit house where the children reside with Mother.

In the August 27, 2002, dissolution decree, the parties were awarded joint legal and physical custody of the children, with the children spending the majority of time with Mother. The court divided the property and debts between the parties. Father was ordered to continue paying the $650.00 payment on the Lee's Summit house. Father was also ordered to provide health insurance for the children and to pay all uninsured medical expenses. The court adopted Father's Form 14, which showed the presumed child support amount to be $545 per month. The court made no finding that this amount was rebutted as being unjust or inappropriate. The court ordered Father to pay that amount in child support and awarded Father the tax exemptions for both children.

Mother argues on appeal that the court erred in its award of child support by not considering Father's income over the previous three years; by accepting Father's Form 14 figures for health insurance and uninsured medical expenses; and by awarding the income tax dependency exemptions to Father.

## Standard of Review

Pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we will affirm the trial court's award of child support unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Adams v. Adams*, 108 S.W.3d 821, 825 (Mo.App.2003). We defer to the trial court's credibility determinations and view the evidence and inferences therefrom in the light most favorable to the decree. *Jordan v. Jordan*, 984 S.W.2d 878, 880 (Mo.App.1999). The trial court has broad discretion in ordering child support. *Adams*, 108 S.W.3d at 828. This court will not disturb the trial court's judgment absent an abuse of discretion or a finding that the evidence is palpably insufficient to support the award. *Id.*

### Point I: Award of Tax Exemptions to Father

Mother first argues that the trial court erred, as a matter of law, in granting Father the tax exemptions for the children. She contends that the Form 14 presumed child support amount must be rebutted as unjust and inappropriate before the income tax exemptions can be awarded to the parent obligated to pay support.

To comply with the requirements of Section 452.340.8 and Rule 88.01,[1] the trial court, in awarding child support, is required to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996). *Conrad v. Conrad*, 76 S.W.3d 305, 308 (Mo.App.2002). In step one, the trial court must determine

---

1. All statutory references are to the Revised Statutes of Missouri 2000, and all rule references are to the Missouri Rules of Civil Procedure 2002, unless otherwise noted.

the presumed child support amount (PCSA) in accordance with Form 14. *Woolridge,* 915 S.W.2d at 379. The court may do so either by accepting the Form 14 calculation of one of the parties or by doing its own. *Id.* at 381–82. In the second step, the court, after considering all relevant factors, determines whether to rebut the PCSA as being unjust or inappropriate. *Id.* at 379. In this case, the court chose to adopt Father's Form 14 PCSA and made no finding that the amount was unjust or inappropriate.

Mother bases her argument under this point on *Conrad v. Conrad,* 76 S.W.3d 305 (Mo.App.2002). In *Conrad,* the trial court rebutted the PCSA as being unjust and inappropriate and lowered the child support award because the child would be spending significant amounts of time with the father in non-court-ordered (NCO) overnight visitation. *Id.* at 313. The court awarded the income tax exemptions to father on the same basis. This court found that the husband had the burden of demonstrating that the NCO visitation would result in significant additional expense and that father failed to present any evidence of any such additional expense to him. *Id.* This court observed that the Form 14 PCSA is based, in part, on the assumption that the income tax exemptions will go to the parent receiving support. *Id.* Assumption 7 of the Form 14 Assumptions states: "The schedule of basic child support obligations assumes that the parent entitled to receive support claims the tax exemption for the children entitled to support." That Assumption was added to Form 14 in 1999. *See* Mo. R. Civ. P. 1999. Because of that assumption, this court concluded that the trial court must first rebut the Form 14 PCSA as being unjust or inappropriate, in

accordance with *Woolridge,* before awarding the tax exemption to the support-paying parent. *Id.* In *Conrad,* although the court had rebutted the PCSA because of the NCO visitation, that rebuttal was not supported by the evidence. Because the rebuttal was not supported, there was no basis for departing from the PCSA and from its attendant aspects (including the tax exemption for the son). *Conrad* thus specifies that the tax exemption for the child cannot be redistributed in the absence of a rebuttal of the PCSA.

Father, on the other hand, cites *In re Marriage of Eskew,* an earlier Southern District decision, for the proposition that no specific finding of "unjust and inappropriate" is necessary for the trial court to award the tax exemption to the support-paying parent. 31 S.W.3d 543 (Mo.App. 2000). Noting the "ever-increasing complexity of Form 14, the proliferation of Directions, Comments, Caveats and Assumptions accompanying Form 14, and the steadily rising flow of case law addressing Form 14," the *Eskew* court refused to "place yet another mine in this legal minefield for trial courts to dodge." *Id.* at 550. Instead, the court determined that the tax exemption award should be reviewed for an abuse of discretion,[2] and applying that standard, found no error. *Id.*

Although we are sympathetic to the Southern District's observations about the burden on trial courts due to the complexity of the Form 14 requirements, we think that this court's reasoning in *Conrad*— grounded in the language of Rule 88.01—is the sounder approach. We conclude that the trial court erred as a matter of law in awarding the tax exemptions to Father without first rebutting the PCSA as unjust and inappropriate. We remand to the trial

---

**2.** The Southern District reaffirmed this determination in *Harris v. Parman,* 54 S.W.3d 679, 690 (Mo.App.2001).

court with directions to make such a finding or to reverse the tax exemption award to Father.

### Points II and III:  Court Erred in Using Father's Form 14

In Mother's second and third points, she complains that the trial court erred in adopting Father's Form 14 child support calculation.  Mother argues, first, that the court erred in using Father's monthly income figure of $5,300.  She then argues that the court erred in using Father's additional child rearing costs of $577 for insurance and $800 for uninsured medical expenses.

#### *Father's Income*

As noted above, in awarding child support, the trial court is required to follow the two-step *Woolridge* procedure.  *Woolridge*, 915 S.W.2d at 379.  In step one, the trial court must determine the PCSA in accordance with Form 14.  *Id.* The court may do this either by accepting the Form 14 calculation of one of the parties or by doing its own.  *Id.* at 381–82.  Here, the trial court chose to adopt Father's Form 14 calculations as the PCSA.  Mother contends that the court erred in doing so because Father's PCSA was based on his new income of $5,300 a month, which is approximately $4,000 less than his average salary for the last three years.  Mother essentially argues that the court should have imputed income to Father based on his substantially higher income for the previous three years, *i.e.*, $99,000, $107,000, and $126,000.

■ The trial court has discretion to impute income to an underemployed parent.  *Rivers v. Rivers*, 21 S.W.3d 117, 124 (Mo.App.2000); *see also* DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM No. 14, LINE 1: GROSS INCOME, DIRECTION ("If a parent is unemployed or found to be underemployed, 'gross income' may be based on imputed income.").  In proper circumstances, a court may impute income to a parent according to what that parent could earn by use of his best efforts to obtain employment suitable to his capabilities.  *Thomas v. Thomas*, 989 S.W.2d 629, 635 (Mo.App.1999).  What constitutes proper circumstances depends on the facts and must be determined on a case-by-case basis.  *Burton v. Donahue*, 69 S.W.3d 76, 79 (Mo.App.2001).  Comment H of the Directions, Comments for Use and Examples for Completion of Form 14 lists some "relevant factors" the court must consider in deciding whether to impute income:

(1) the parent's probable earnings based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;

(2) the parent's occupational qualifications;

(3) the parent's employment potential;

(4) the available job opportunities in the community;  and

(5) whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

■ Father argues that this is not the typical situation for imputing income, in that he has not voluntarily reduced his income in an effort to avoid child support.  Father points out that he involuntarily lost his job in Colorado and that he took the lower-paying job in Missouri, in part, to be closer to his children and so that his health insurance would cover more of the children's medical expenses.  Father also points out that he has never tried to evade his obligation to his children as evidenced by his support of them during the couple's

separation. Nevertheless, a court may impute a higher income than is currently being earned if the record shows that the parent has the capacity to earn more. *Rivers*, 21 S.W.3d at 124.

Here, Father has been successful in the car sales industry for a number of years and was a new car sales manager for the previous three years with earnings exceeding $99,000 each of those years. The record indicates that Father is a proven producer in car sales. Also, the record shows that earnings from the automobile sales industry are typically subject to rapid and substantial increases for capable producers. Father had been on his new job only twenty-four days prior to the hearing. Father testified that it is common in his line of work for a salesperson to start at a lower salary, work up to much higher earnings, and, if he loses his position, to have to start over elsewhere back at the lower salary.[3] Mother agrees, but contends that this merely shows that Father's income will quickly increase back to a much higher figure. Indeed, she points to the fact that Father's salary at his Colorado employer started at $5,000 per month and his earnings within six months were up to $8,500 per month. The record, including Father's testimony, was consistent with Mother's argument.

It was expected by all that Father's income would go up in the near future. The problem was that at the time of trial, which was less than a month after Father began that job, no one could predict with accuracy what his earnings would be. In facing this dilemma, the trial court chose to accept Father's then-current earnings for Form 14 purposes, recognizing that a

modification could be sought later to bring the matter into line with reality. In this particular case, we need not determine whether such approach was inappropriate, because we are vacating and remanding the case for reconsideration of the child support award and the tax exemption determination. Accordingly, in the interests of judicial economy, the court should, on remand, take additional evidence as to Father's earnings, recalculate the PCSA, and also determine the allocation of the tax exemptions in the light of *Conrad.*

### Additional Child Rearing Costs

Mother next argues that the trial court erred in adopting Father's Form 14 figures for his "additional child rearing costs" of $477.00[4] for health insurance; uninsured extraordinary medical costs of $800.00; and "other extraordinary child rearing costs" of $650.00 for the monthly payment on the Lee's Summit home. As noted above, the court can properly adopt the Form 14 of one of the parties, and, here, the court adopted Father's. In addition to $545.00 in monthly child support, the court ordered Father to continue making the $650.00 monthly house payment.

Father testified that he would have health insurance for the children through his new employer beginning in approximately two months, and that he was carrying COBRA insurance from his previous employer in the meantime. The monthly cost of the COBRA insurance was $238.12 per child, or approximately $477.00. Father testified that he did not know what the cost of the children's health insurance would be through his new employer.

---

**3.** Father opined that sometimes a salesperson will become so highly compensated that the boss "can no longer afford him."

**4.** Mother points out that the decree's reference to the $577.00 figure must be an error in that $477.00 is the amount Father testified to and the PCSA on Father's Form 14 can only be arrived at by using the $477.00 figure.

Father's income and expense statement (filed August 13, 2002) shows a semi-monthly payroll deduction of $180.00 for health insurance, or approximately $360.00 per month. There was no evidence that this figure included coverage for the children because, according to Father's testimony, the children's health coverage had not yet commenced.

Perhaps Father's cost for health insurance under his employer's plan will be less than the $477.00 that he is paying for the COBRA insurance. However, the record at this time provides no better figure than the $477.00 used by the trial court.

Mother also argues that the court erred in accepting Father's $800.00 uninsured medical expense figure because there was insufficient evidence to support the notion that such an expense would continue once Father's new insurance went into effect. Father testified that with the COBRA insurance, the cost of the children's uninsured prescriptions was approximately $800 per month. Father also testified that, in addition to the prescription costs, he had spent approximately $3,000 per year on other uninsured medical expenses in the past three years.[5]

Both Father and Mother testified that they did not know how much the children's uninsured medical expenses would be once Father's new insurance went into effect, but Father testified that he took the job in Missouri, in part, so that his insurance would cover more of the children's medical expenses. Father indicated at trial that the children's pre-existing conditions would be covered under his new insurance, stating that having the children "accepted with no prior conditions involved" was a "condition of the employment." In Father's brief to this court, he contends that

the children's pre-existing conditions will *not* be covered under his new employer's insurance, which we regard as flatly contradictory to the trial testimony.

Father's expenses in both these areas may indeed go down once his new employer's insurance goes into effect, although there was no evidence before the trial court to verify that. The only evidence presented to the trial court was Father's actual expenses for the children's uninsured medical costs in the previous three years. The court had no evidence from which to evaluate what those expenses would be in the future. Because this case is being remanded anyway, the court may, in view of the fact that more information should be available at this time, take additional evidence as to Father's anticipated actual insurance and uninsured medical expenses and re-evaluate the Form 14 calculation at that time.

### Conclusion

The judgment is vacated and the cause is remanded for further proceedings in accordance with this opinion.

LOWENSTEIN and HOWARD, JJ., concur.

---

5. Father evidently also submitted an exhibit to the trial court showing that he had paid $8,881.91 in medical expenses for the period July 1999 to September 2001. That exhibit, Petitioner's Exhibit 2, is not included in the record filed with this court, however.