**Owen MacDONALD, Respondent,**

v.

**Karen (MacDonald) MINTON, Appellant.**

**No. WD 62487.**

Missouri Court of Appeals, Western District.

Sept. 7, 2004.

Les D. Wight, II, Independence, MO, for Appellant.

Gina Marcia Graham, Blue Springs, MO, for Appellee.

Before RONALD R. HOLLIGER, ROBERT G. ULRICH and JAMES M. SMART, JR., JJ.

PER CURIAM.

Karen Minton appeals the trial court's judgment in her action for modification of child support against Owen MacDonald, her former husband. The judgment is affirmed in part and reversed in part.

### Statement of Facts

When the parties were divorced in 1986, Owen MacDonald (Father) was ordered to pay $276 per month for the support of the couple's two minor children. The child support amount was never increased by court order; but Father had, for a long period of time, paid more than the required amount each month. Beginning in 1996, Father's payments became irregular, and in some months, he did not pay at all. In other months, he paid more than the required amount. In 1999, Karen Minton (Mother) filed a petition for modification to increase the amount of support for the children.

At the time of trial, the older child was in college, and the younger was a senior in high school, planning on attending college. The younger child suffers from a skin allergy that causes total hair loss. As a result, she has prosthetic hair attached to her head every two or three weeks, which costs in excess of $3,000 per year. The record is not completely clear, but it appears that most of this expense may be covered by Mother's insurance. The older child has a scholarship that covers 100% of her college tuition. There is some evidence that at least part of her room and

board is covered by her scholarship, and the court found that she pays for her room and board by working part time.

Father has remarried and has four children from that marriage. Three of those children are triplets, who have had major health problems since their birth in 1999. Father has worked as a registered nurse in the past, but was working at "rehabbing" a house at the time of the hearing. The court imputed income to Father in the amount of $2,100 per month based on the average of his last three years' income while working as an RN. Father testified that he could earn $18–$21 per hour working as an RN, but that he could not work full time due to his own health problems (i.e., diabetes, sores on his feet, eye problems) and because he cares for the triplets when his wife is working.

Mother's monthly income is $4,800 (about $58,000 per year). Mother also has remarried.

At trial, Father asked the court "to consider an [earlier] agreement between the parties as to child support," but the court found no evidence that the parties had ever reached such an agreement. The court concluded, based on its own Form 14 calculation, that there was no basis for increasing the child support amount and ordered that it remain at $276 a month. The court also ordered Father and Mother to share equally in the costs of the children's post-secondary education. and unreimbursed medical expenses.

In its findings, the court stated that Mother sought a child support arrearage in the amount of $7,000. Mother says that she did *not* seek an arrearage determination from the court and now complains that the court erred in so finding. The court found, based on circuit court records introduced by Father, that an arrearage of $607 existed as of April 2002 (seven months prior to trial). The court's decree did not address payment of any arrearage, however.

Mother appeals.

## Analysis

Mother brings four arguments on appeal. Her first two points relate to Father's prior overpayments of child support and the court's finding of an arrearage. Mother's third point involves the extraordinary expense for the younger child's skin allergy and hair replacements and both children's college expenses. Finally, Mother contends that there was no substantial evidence to support the $2,100 imputed income to Father.

## Standard of Review

 Pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), a child support award will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Vendegna v. Vendegna*, 125 S.W.3d 911, 913 (Mo.App.2004). We defer to the trial court's credibility determinations and view the evidence and inferences therefrom in the light most favorable to the decree. *Id.* The trial court has broad discretion in ordering child support. *Adams v. Adams*, 108 S.W.3d 821, 828 (Mo.App. 2003). Absent a manifest abuse of discretion or a finding that the evidence is palpably insufficient to support the award, this court will not substitute its judgment for the trial court's. *Id.*

## The Arrearage Issue

Mother's first two points relate to the trial court's finding of an arrearage in child support in the amount of $607. We first address Point II.

In her second point, Mother argues that the court erred as a matter of law in

considering Father's prior overpayments in some months to satisfy the arrearage created in the months in which he did not pay. Mother complains that by finding an arrearage amount of $607, as opposed to the more than $7,000 she has calculated, the court was, in effect, applying past monthly overpayments to future arrearages and thereby depriving her of $7,000 in underpayments on a month-by-month basis.

At trial, Mother presented an exhibit that showed her own calculations as to the amount that Father was in arrears on his child support. That exhibit showed an arrearage of $7,300 for the period 1996 until September 2002. Father's evidence, which consisted of a detailed payment history report from the Jackson County Circuit Court, showed that from sometime in 1989 until early 1996, Father had consistently paid more than the required $276 in child support each month. However, his evidence also showed that beginning in 1996, his payments became irregular, and in some months, he did not pay at all.

■ The law is clear in Missouri that, absent an agreement between the parties or other equitable considerations, voluntary overpayments of child support cannot be used to satisfy future child support payments. *See Samples v. Kouts*, 954 S.W.2d 593, 600–01 (Mo.App.1997); *Finley v. Morrow*, 697 S.W.2d 543, 544 (Mo.App. 1985) (voluntary overpayments of child support in Missouri cannot be used as a "setoff" against future payments). This is true regardless of whether the overpayment is made directly to the custodial parent or to the circuit court clerk. *Samples*, 954 S.W.2d at 601. Furthermore, the circuit clerk's recording of child support payments is merely an accounting, not a legal determination as to the character of the monies paid in, and, therefore, is not binding on the court. *Id.*

Father points out that the trial court has discretion to apply the overpayments to future obligations where equity so requires, citing *M. v. M.*, 313 S.W.2d 209, 213 (Mo.App.1958). According to Father, the trial court implicitly determined that equity required it here and this court should affirm on that basis.

■ At trial, Father introduced an exhibit showing his payment history through the court. Those court records, which the trial court relied upon in making its findings, are extremely confusing and unclear, but appear to show that the $607 amount was actually a credit balance as opposed to an arrearage. The court records include a column for "Total Arrears," which as of April 2002 showed -$607.50. The "Total Arrears" column on the payment report appears to be simply a running total of all payments due, less all payments credited to the account, for the life of the support order. Thus, the court's finding that Father was $607 in arrears was erroneous. First, the report appears to show that the $607 figure was actually a credit balance as opposed to an arrearage. Also, the report does not accurately reflect Father's voluntary overpayments for many years, for which he is not entitled to future credit, and then, beginning in 1996, his consistent arrearage in payment. We agree with Mother's argument in Point II that the court incorrectly calculated the amount of the arrearage.

■ We now return to Mother's first point, in which she complains that the trial court erred in making *any* findings with regard to an arrearage in child support since the matter was neither pleaded nor tried before the court and neither party requested a determination of the amount of any arrearage. Mother acknowledges that there was evidence before the court with regard to the arrearage, but contends

it was offered only to prove the necessity of increasing child support and was not offered for an arrearage determination. Thus, according to Mother, the matter was not tried by "implied consent" under Rule 55.33(b),[1] which is applicable "only where the evidence presented bears solely upon the unpleaded issue and not upon issues already in the case." *Edna Enters., Inc. v. Spirco Envtl., Inc.,* 853 S.W.2d 388, 392 (1993). Father asserts that the arrearage issue was tried by implied consent. We agree with Mother. Mother's documents which included matters related to the arrearage were also relevant for other purposes. Thus, the issue was not tried by implied consent. *See Thompson v. Thompson,* 835 S.W.2d 570, 572–73 (Mo. App.1992).

Mother did not ask for a determination of arrearage. For the above reasons, we reverse the judgment to the extent that the trial court made a finding of the amount of the arrearage.

### Extraordinary Expenses

In Mother's third point, she argues that the court erred in not including the cost of the youngest child's medical treatments and hair replacements in its Form 14 calculation. In the body of her argument (but not in her point relied on, in violation of Rule 84.04(e)[2]), Mother also contends that the court should have included the children's college expenses in the Form 14 calculation as well.

▆▆▆ The party seeking a modification of child support must show a change of circumstances so substantial and continuing as to make the existing terms of the support award unreasonable. § 452.370.[3] The use of Form 14 and its Directions, Comments for Use and Examples for Completion is mandatory in making such a determination. *Woolridge v. Woolridge,* 915 S.W.2d 372, 378 (Mo.App.1996). Mother contends that inclusion of both these expenses on either line 6d (extraordinary medical costs) or 6e (non-medical recurring extraordinary expenses) of the Form 14 also is mandatory under *Woolridge,* in that the expenses are reasonable and necessary and the amounts are predictable and recurring. Mother notes that the inclusion of either of these costs would have satisfied the 20% threshold for an increase in child support.[4]

Rather than including a figure on the Form 14, the court ordered Mother and Father to share any unreimbursed medical expenses on a 50/50 basis—which obviously was intended to include the cost of the hair replacements. Father argues that since the actual amount of the expense is unknown (in that questions remain as to the amount covered by insurance and the

---

1. All rule references are to the Missouri Rules of Civil Procedure, 2004, unless otherwise indicated. Rule 55.33(b) provides in part: When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

2. Rule 84.04(e) provides: "The argument shall be limited to those errors included in the 'Points Relied On.'"

3. All statutory references are to Revised Statutes of Missouri, 2000, unless otherwise noted.

4. Section 452.370.1 states in pertinent part:

 If the application of the child support guidelines and criteria set forth in section 452.340 and applicable supreme court rules ... would result in a change of child support from the existing amount by twenty percent or more, a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable[.]

expected duration of the problem) the court was correct in dividing the expense on a 50/50 basis and not including an actual dollar amount on the Form 14.

■■■ Rule 88.01(b) requires the use of Form 14 to establish the presumed child support amount. *Woolridge*, 915 S.W.2d at 378. The Directions and Comments for Use applicable to Line 6d of Form 14 provide for inclusion in the Form 14 calculation of reasonable and necessary uninsured medical costs and extraordinary medical costs that are "predictable and recurring." The Comments for Line 6e provide that post-secondary educational expenses *may* be included in the Form 14 calculation as other extraordinary child-rearing costs if the parents agree or the court so orders. However, a "caveat" included under both Lines 6d and 6e provides:

> A finding by the court or administrative agency that the presumed child support amount is unjust or inappropriate is not necessary where the parent obligated to pay support is also ordered to pay any percentage of the [extraordinary costs] of the children who are the subject of the proceeding.

Thus, the court may, in its discretion, order the support-paying parent to pay a percentage of these extraordinary expenses without including it in the Form 14 calculation and without making a finding that the Form 14 presumed child support amount is unjust or inappropriate. *See Keller v. Keller*, 18 S.W.3d 589, 599 (Mo. App.2000) (uninsured extraordinary medical expenses that are not "predictable and recurring" may be handled by separate order); *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 878 (Mo.App.2001) (as an alternative to including post-secondary education expenses in the Form 14 calculation or a rebuttal thereof, the trial court may include such expenses in a separate order).

■■■ There was testimony at trial that the treatment of the younger child's skin allergies and the expense for her hair replacements was at least partially (and perhaps fully) covered by Mother's health insurance. Mother seemed to be uncertain as to how much would be covered. The actual cost of the treatments and hair replacements is also unclear. Mother refers to both an expense of "$3,000 per year" and an expense of "$3,000 per year, plus $200 per hairpiece." Thus, the actual out-of-pocket cost for the treatments and replacements was far from certain or predictable. The court properly exercised its sound discretion in assigning each parent a percentage of the actual cost of these extraordinary expenses.

Similarly, the actual out-of-pocket cost for the children's college education was also uncertain. The oldest child's tuition was fully paid by scholarship, but there was conflicting testimony and evidence as to whether her room and board was covered by the scholarship. The evidence seems to show that it is at least partially covered. The cost of the younger child's college education also was uncertain at the time of trial. The court was certainly within its discretion in assigning the actual education costs on a 50/50 basis to the parents rather than adding a specific dollar amount to the Form 14 calculation. Point denied.

### Imputed Income

■■■ Mother's final point is that there was no credible or substantial evidence to support the $2,100 imputed income amount to Father. "Substantial evidence is that which if true has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Hurlock v. Park Lane Med. Ctr., Inc.*, 709 S.W.2d 872, 880 (Mo.App.1985).

When a parent is unemployed or underemployed, the monthly gross income for the Form 14, Line 1, can be imputed. Comment H for Line 1 directs the court, in imputing income, to consider all relevant factors concerning the parent's earning potential, including: (1) the parent's work history during the three years prior to the hearing; (2) the parent's occupational qualifications; (3) the parent's employment potential; (4) the available job opportunities; and (5) the condition or circumstances of any children in the custody of the parent. Imputing income is a factual determination that must be adjudged on a case-by-case basis. *Adams*, 108 S.W.3d at 827.

Father presented evidence showing that the average of his three previous years' income working as an RN was approximately $2,100 per month, and the court evidently based its imputed income figure on that evidence. Father testified that he could not work full time as an RN due to health problems. He presented evidence of his diabetes, foot ulcers, and eye problems. Father also testified that he cared for his triplets when their mother was at work and that the triplets suffered with health problems of their own.

Mother contends the court *should have* based the imputation of income on Father's testimony that he could earn $18–$21 per hour and imputed an income to him based on a 36–hour work week, making his income somewhere between $2,700–$3,150 per month. Mother actually is arguing that the court should have used *different* evidence to impute income, not that there was not sufficient evidence to support the amount arrived at. Mother presented no evidence to dispute Father's claims that he was physically unable to work 36 hours a week as an RN.

Because Father testified that he could earn at least $18 per hour as an RN, and

the court imputed income in the amount of $2,100 per month, the court evidently believed Father's evidence that he was physically unable to work 36 hours a week, as this would calculate to 28 hours of work per week. See Rule 73.01(c) ("All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."). The trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony it hears. *Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App. 1996).

We must defer to the trial court's determinations as to witness credibility, and unless we find that the evidence is palpably insufficient to support the award, we will not substitute our judgment for that of the trial court. *Adams*, 108 S.W.3d at 828. We do not find the evidence palpably insufficient. Considering all the relevant factors, including Father's poor health, his past earnings history, his children's physical condition, and his need to accommodate his wife's work schedule in order to care for those children, we find that there was sufficient evidence to support the court's imputation of income to Father in the amount of $2,100 per month. Point denied.

## Conclusion

For the foregoing reasons, the judgment is reversed as to the finding of the arrearage. The judgment is affirmed in all other respects.